*Solicitation Version*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **WHITE ROCK MEDICAL CENTER, LLC,** *et al.*[1] | § | **Case No. 26-90115 (ARP)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.** | § | |
| | § | |

**SECOND PLAN OF REORGANIZATION OF WHITE ROCK MEDICAL CENTER, LLC AND ITS AFFILIATED DEBTORS AS MODIFIED ON JULY 17, 2026**

**REED SMITH LLP**

Omar J. Alaniz (SBN 24040402)
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201
Telephone: (469) 680-4200
Facsimile: (469) 680-4299
E-mail:  oalaniz@reedsmith.com

- and -

Scott M. Esterbrook (admitted *pro hac vice*)
Derek M. Osei-Bonsu (admitted *pro hac vice*)
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420
*Counsel for the*
*Debtors and Debtors-in-Possession*

Dated:  July 24, 2026
        Houston, Texas

---

[1] The Debtors in these chapter 11 cases and the last four digits of each of their federal identification numbers are White Rock Medical Center, LLC (6083); NCP Management, LLC (8327); North Houston Surgical Hospital, LLC (2161); National Payroll Services, LLC (3573); Heights Healthcare of Texas, LLC (0118); Heights Healthcare of Houston, LLC (3093); and Ashland Healthcare, LLC (0023). The location of the Debtors' corporate headquarters and the Debtors' service address is 9440 Poppy Drive Dallas, Texas 75218.

## TABLE OF CONTENTS

**ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION** ............................ 1

**ARTICLE II ADMINISTRATIVE EXPENSES AND OTHER UNCLASSIFIED CLAIMS**.................................................................................................................... 15

2.1    Administrative Claims .................................................................................... 15

2.2    DIP Claims..................................................................................................... 16

2.3    Priority Tax Claims ........................................................................................ 17

2.4    Professional Fee Claims................................................................................. 17

2.5    Post-Effective Date Fees and Expenses ........................................................ 18

**ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** ...................................................................................................... 18

3.1    Classification in General................................................................................ 18

3.2    Summary of Classification............................................................................. 18

3.3    Treatment of Classes ..................................................................................... 19

3.4    Special Provision Regarding Unimpaired Claims ......................................... 23

3.5    Subordination of Claims ................................................................................ 23

**ARTICLE IV ACCEPTANCE OR REJECTION OF THIS PLAN**.................................... 23

4.1    Acceptance by Class Entitled to Vote........................................................... 23

4.2    Presumed Acceptance of this Plan................................................................ 24

4.3    Deemed Rejection of this Plan ...................................................................... 24

4.4    Confirmation by Cramdown ......................................................................... 24

4.5    Elimination of Classes .................................................................................. 24

4.6    Controversy Concerning Impairment ........................................................... 24

4.7    Deemed Consent to Modification ................................................................. 24

**ARTICLE V MEANS FOR IMPLEMENTATION OF THIS PLAN** ................................ 24

5.1    Appointment of the Plan Administrator........................................................ 24

5.2    Powers and Duties of the Plan Administrator............................................... 25

5.3    Plan Administrator Compensation, Expenses, and Retention of Professionals............. 26

5.4    Exculpation; Indemnification; Insurance; Liability Limitation ..................... 26

5.5    Establishment of Plan Administrator Reserve .............................................. 27

5.6    Reorganized Debtor. ..................................................................................... 27

5.7    Indemnification of Resigning Employees..................................................... 28

5.8    Restructuring Transactions. ........................................................................... 28

5.9    Sources of Cash for Distributions and Operations........................................ 29

5.10    Cancellation of Existing Securities and Agreements.......................................................29

5.11    Authorization of Issuance of New Securities Pursuant to the Restructuring
        Transaction............................................................................................................... 30

5.12    Execution, Delivery, and Enforcement of Plan Documents Upon the
        Restructuring Transaction......................................................................................... 30

5.13    Intercompany Interests and Intercompany Claims .................................................. 31

5.14    Deemed Consolidation.............................................................................................. 31

5.15    Corporate Action...................................................................................................... 31

5.16    Effectuating Documents; Further Transactions ....................................................... 31

5.17    Release of Liens........................................................................................................ 32

5.18    Tax Obligations of Liquidating Debtor.................................................................... 32

5.19    Exemption from Certain Transfer Taxes and Recording Fees.................................. 32

5.20    Further Authorization................................................................................................ 32

5.21    Waiver and Release of Supporting Creditor Unsecured Claims............................... 32

5.22    Replacement of Equipment Guaranties .................................................................... 33

ARTICLE VI DISTRIBUTIONS ............................................................................................... 33

6.1     Distributions Generally.............................................................................................. 33

6.2     No Postpetition or Default Interest on Claims.......................................................... 33

6.3     Timing of Distributions............................................................................................. 33

6.4     Distribution Record Date ......................................................................................... 34

6.5     Plan Administrator Distributions .............................................................................. 34

6.6     Delivery of Distributions .......................................................................................... 34

6.7     Undeliverable Distributions and Unclaimed Property.............................................. 34

6.8     Minimum Distributions.............................................................................................. 34

6.9     No Distribution in Excess of Amount of Allowed Claim.......................................... 34

6.10    Allocation of Distributions Between Principal and Interest ..................................... 35

6.11    Setoffs and Recoupments.......................................................................................... 35

6.12    Withholding and Reporting Requirements ............................................................... 35

6.13    Claims Paid or Payable by Third Parties .................................................................. 36

ARTICLE VII PROCEDURES FOR DISPUTED CLAIMS ...................................................... 36

7.1     Allowance of Claims................................................................................................. 36

7.2     Objections to Claims................................................................................................. 37

7.3     Estimation of Claims................................................................................................. 37

7.4     No Distributions Pending Allowance ....................................................................... 37

7.5     Resolution of Claims................................................................................................. 37

7.6     Disallowed Claims ......................................................................................... 38

**ARTICLE VIII TREATMENT OF EXECUTORY CONTRACTS AND
        UNEXPIRED LEASES ......................................................................... 38**

8.1     Assumption or Rejection of Executory Contracts and Unexpired Leases ...................... 38

8.2     Assumption of the Hospital Lease ................................................................ 39

8.3     Assumption or Rejection of Government Agreements .................................. 40

8.4     Cure of Defaults Under Assumed Contracts ................................................ 40

8.5     Claims Based on Rejection of Executory Contracts and Unexpired Leases ................. 41

8.6     Contracts and Leases Entered into After the Petition Date ............................. 41

8.7     Reservation of Rights .................................................................................. 41

**ARTICLE IX CONDITIONS PRECEDENT TO CONSUMMATION OF THIS
        PLAN .......................................................................................................... 41**

9.1     Conditions Precedent to the Effective Date .................................................. 41

9.2     Waiver of Conditions Precedent ................................................................... 42

9.3     Notice of Effective Date ............................................................................... 42

**ARTICLE X EFFECT OF PLAN CONFIRMATION ............................................ 42**

10.1    Binding Effect ............................................................................................. 42

10.2    Discharge ..................................................................................................... 43

10.3    Injunction .................................................................................................... 43

10.4    Exculpation ................................................................................................. 44

10.5    Releases ....................................................................................................... 44

**ARTICLE XI RETENTION OF JURISDICTION ................................................. 46**

11.1    Retention of Jurisdiction ............................................................................. 46

11.2    Jurisdiction for Certain Other Agreements .................................................. 48

11.3    Courts of Competent Jurisdiction ................................................................ 48

**ARTICLE XII MISCELLANEOUS PROVISIONS ............................................... 49**

12.1    Payment of Statutory Fees .......................................................................... 49

12.2    Amendment or Modification of this Plan ..................................................... 49

12.3    Substantial Consummation and Case Closing .............................................. 49

12.4    Severability of Plan Provisions .................................................................... 49

12.5    Successors and Assigns ................................................................................ 50

12.6    Revocation, Withdrawal, or Non-Consummation ........................................ 50

12.7    Governing Law ............................................................................................ 50

12.8    Immediate Binding Effect ............................................................................ 50

12.9    Entire Agreement ......................................................................................... 50

12.10   Notice ........................................................................................................... 50

12.11   Votes Solicited in Good Faith ...................................................................... 51

12.12   Closing of Chapter 11 Cases ........................................................................ 51

12.13   Waiver or Estoppel ....................................................................................... 51

# ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

(a)      ***Defined Terms***. As used herein, capitalized terms shall have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.      ***Administrative Claim*** means a Claim entitled to priority under section 503(b) (including 503(b)(3), 503(b)(4), 503(b)(9), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code (other than DIP Claims)), including (a) the actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Estates and operating the business of the Debtors; (b) Professional Fee Claims; (c) U.S. Trustee Fees; and (d) any Claims that have been afforded administrative expense priority by Final Order of the Bankruptcy Court.

2.      ***Administrative Claims Bar Date*** means the first Business Day that is thirty (30) days following the Effective Date, which date shall be the deadline for filing requests for payment of Administrative Claims other than (a) Professional Fee Claims (such claims are subject to the Professional Fee Claims Bar Date), (b) claims asserted under section 503(b)(9) of the Bankruptcy Code (such claims are subject to the General Bar Date), (c) U.S. Trustee Fees, (d) Administrative Claims that have been Allowed on or before the Effective Date, and (e) Administrative Claims that were already asserted in the Chapter 11 Cases pursuant to a timely Proof of Claim in accordance with the Bar Date Order.

3.      ***Affiliate*** means, with respect to any Person, "affiliate" as defined in section 101(2) of the Bankruptcy Code, as if such Person were a Debtor.

4.      ***Allowed*** means, with respect to any Claim against the Debtors, except as otherwise provided herein, (a) a Claim that is (i) listed in the Schedules as of the Effective Date as neither disputed, contingent, nor unliquidated, and for which no Proof of Claim has been timely filed and no objection has been filed by the Claims Objection Deadline, or (ii) evidenced by a valid Proof of Claim or request for payment of Administrative Claim, as applicable, filed by the applicable Bar Date, and as to which the Debtors or other parties in interest have not filed an objection to the allowance thereof by the Claims Objection Deadline, (b) a Claim that is Allowed under this Plan or any stipulation or settlement approved by, or Final Order of, the Bankruptcy Court, (c) a Claim that is estimated under section 502(c) of the Bankruptcy Code and Allowed in such estimated amount pursuant to an order of the Bankruptcy Court for purposes of distribution, or (d) a Claim that is resolved by a written settlement or compromise entered into by the Plan Administrator pursuant to Section 7.5 of this Plan, in the settled or compromised amount, without the need for any further order of the Bankruptcy Court; provided, however, that any Claims allowed solely for the purpose of voting to accept or reject this Plan pursuant to an order of the Bankruptcy Court will not be considered "Allowed Claims" under this Plan; provided, further, that unless expressly waived by the Plan or Confirmation Order, the Allowed amount of a Claim shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable.

Notwithstanding the foregoing, a Claim shall not be Allowed and shall not be entitled to a distribution under this Plan to the extent it has been satisfied prior to the Effective Date. If a Claim is Allowed only in part, references to Allowed Claims include and are limited to the Allowed portion of such Claim. Notwithstanding anything to the contrary herein, no Claim that is disallowed in accordance with Bankruptcy Rule 3003 or section 502(d) of the Bankruptcy Code is Allowed and each such Claim shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.

5.      *Ascentium* means collectively and as applicable, Bancorp Ascentium, Ascentium Capital (Regions Bank) and Ascentium Capital, LLC.

6.      *Assets* means collectively and without limitation, all real, personal, tangible, intangible, and mixed property of the Debtors and the Estates, wherever located and by whomever held, of every kind and nature, whether now owned, held, possessed, or controlled, or hereafter acquired by operation of law, contract, or otherwise, including all property of the estate within the meaning of section 541 of the Bankruptcy Code (including section 541(a)(6)–(7) proceeds and after-acquired property), together with all proceeds, products, offspring, rents, and profits thereof, and all rights and interests appurtenant thereto, including, without limitation: all Cash; deposit accounts and securities accounts (and all cash and cash equivalents therein); accounts receivable and other receivables; inventory; fixtures; equipment; furniture; general intangibles; intellectual property and intellectual property rights (including all patents, trademarks, copyrights, trade names, service marks, domain names, trade secrets, and all applications, registrations, licenses, royalties, and rights to sue or recover for past, present, or future infringement, dilution, misappropriation, or other violation); contracts, leases, and all rights thereunder (including rights to payment for pre- and post-petition services or goods, cure rights, and claims for breach); real property interests (including fee, leasehold, easements, licenses, options, and purchase/lease rights); choses in action and other claims of any kind or nature (whether known or unknown, accrued or unaccrued, fixed or contingent, liquidated or unliquidated, matured or unmatured), including all Causes of Action; Avoidance and Other Actions (including claims under chapter 5 of the Bankruptcy Code and analogous state-law claims); rights of setoff, recoupment, contribution, indemnity, and subrogation; commercial tort claims; tax attributes and rights (including net operating losses, credits, refunds, and carryforwards), tax receivables, and tax refunds (whether received or receivable); insurance policies, surety bonds, and all rights, claims, refunds, premium rebates, and proceeds thereunder (including rights to assert, prosecute, settle, release, or recover insurance proceeds for any insured claim); licenses, permits, approvals, and governmental authorizations (to the extent transferable); books and records (including all electronically stored information), data, and data rights; membership interests, equity interests, securities and other investment property; prepaid expenses, deposits, and escrows (to the extent not excluded below); and any and all other property, rights, or interests of the Debtors or the Estates of any kind or description, whether arising before or after the Petition Date, including property acquired by the Estates post-petition under section 541(a)(7) of the Bankruptcy Code.

7.      *Assumed Contracts* means those Executory Contracts and Unexpired Leases to be assumed by the Debtors under section 365 or 1123 of the Bankruptcy Code and assigned to the Plan Sponsor pursuant to this Plan, except for the Hospital Lease, which is dealt with separately under the Plan.

- 2 -

8.      ***Avoidance and Other Actions*** means any and all actual or potential avoidance, recovery, subordination, Causes of Action, Claims, or other actions or remedies that may be brought by and on behalf of the Debtors or their Estates under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies arising under sections 510 and 541–553 of the Bankruptcy Code, regardless of whether or not such action has been commenced prior to the Effective Date.

9.      ***Ballot*** means each of the ballot forms distributed to each Holder of a Claim or Interest that is entitled to vote to accept or reject this Plan and on which the Holder is to indicate, among other things, acceptance or rejection of this Plan.

10.      ***Bank of America Equipment*** means the equipment subject to the Bank of America Financing Agreements.

11.      ***Bank of America Financing Agreements*** means collectively that certain Master Loan and Security Agreement Number 53183-70000 and all related schedules governing the terms of the financing of the Bank of America Equipment.

12.      ***Bankruptcy Code*** means title 11 of the United States Code, as now in effect or hereafter amended, to the extent such amendments apply to the Chapter 11 Case.

13.      ***Bankruptcy Court*** means the United States Bankruptcy Court for the Southern District of Texas, Houston Division and, to the extent of any withdrawal of reference under section 157 of title 28 of the United States Code, the United States District Court for the Southern District of Texas.

14.      ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, and the general, local, and chamber rules of the Bankruptcy Court, as now in effect or hereafter amended.

15.      ***Bar Date*** means, as applicable: (a) the General Bar Date; (b) the later of (i) the General Bar Date and (ii) 5:00 p.m. (prevailing Central Time) on the date that is thirty (30) days after entry of a Bankruptcy Court order pursuant to which Executory Contracts or Unexpired Leases are rejected for Claims arising from such rejected agreements; (c) the later of (i) the General Bar Date and (ii) 5:00 p.m. (prevailing Central Time) on the date that is thirty (30) days after the date that notice of any applicable amendment or supplement to the Schedules is served on a claimant for those Claims affected by any such amendment or supplement to the Schedules; (d) 5:00 p.m. (prevailing Central Time) on July 20, 2026 for Governmental Units; (e) the Administrative Claims Bar Date; and (f) the Professional Fee Claims Bar Date.

16.      ***Bar Date Order*** means the *Order (I) Establishing Deadlines and Procedures for Filing Proofs of Claim; (II) Approving Form and Manner of Notice Thereof; and (III) Granting Related Relief* [Docket No. 144].

17.      ***Business Day*** means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

18.     *Cash* means legal tender of the United States of America and equivalents thereof.

19.     *Cash Collateral Orders* means collectively, the interim and Final Orders of the Bankruptcy Court in these Chapter 11 Cases at Docket Numbers 51, 99, 197, 252, and 338 permitting the Debtors' use of the Secured Lenders' Cash Collateral, as such term is defined therein.

20.     *Cause of Action* means, without limitation, any and all claims, causes of action, proceeding, agreement, Claim, cause of action, controversy, demand, debt, right, action, Avoidance and Other Actions, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, injury, remedy defense, offset, power, privilege, recoupment, cross-claim, counterclaim, third-party claim or action, indemnity claim, contribution claim, or any other claim, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, accrued or to accrue, foreseen or unforeseen, whether assertable directly or derivatively, whether pending in litigation or otherwise, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.

21.     *Chapter 11 Cases* means the above captioned cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court from the Petition Date through the Effective Date.

22.     *Chief Restructuring Officer* means Erik White, as approved by the Bankruptcy Court on March 16, 2026 [Docket No. 165].

23.     *Claim* means a "claim" as defined in section 101(5) of the Bankruptcy Code.

24.     *Claims Administration Case* means the Chapter 11 Case of North Houston Surgical Hospital or such other Debtor that is not expected to operate after the Effective Date, as designated by the Debtors, Plan Administrator or the Reorganized Debtor, as applicable, that remains open on or after the Effective Date solely as an administrative docket for the reconciliation, objection, estimation, allowance, disallowance, settlement, and payment of Claims against any Debtor, for such other matters as are necessary or appropriate to implement the Plan, and U.S. Trustee reporting with respect to any Chapter 11 Case that remains open; *provided however*, that the Claims Administration Case shall not be the Chapter 11 Case of White Rock Medical Center, LLC unless the Bankruptcy Court orders otherwise and this Plan shall not require the Chapter 11 Case of White Rock Medical Center, LLC to remain open after such case is otherwise eligible for closing by final decree.

25.     *Claims Objection Deadline* means for all Claims, the latest of: (a) 180 days after the Effective Date, subject to extension by order of the Bankruptcy Court; (b) 60 days after the filing of a Proof of Claim or request for payment of Administrative Claims for such Claim; and (c) such other objection deadline as may be specifically fixed by this Plan, the Confirmation Order, the Bankruptcy Rules, or a Final Order.

26. ***Claims Reconciliation Date*** means the date on which all General Unsecured Claims have become Allowed Claims or have been disallowed by Final Order, and no Disputed Claims remain outstanding in Class 5.

27. ***Class*** means a category of Claims or Interests, as described in Article III.

28. ***Confirmation Date*** means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

29. ***Confirmation Hearing*** means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

30. ***Confirmation*** means confirmation of this Plan by the Bankruptcy Court under section 1129 of the Bankruptcy Code.

31. ***Confirmation Order*** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, providing final approval of the Disclosure Statement as providing "adequate information" within the meaning of section 1125(a) of the Bankruptcy Code and establishing certain dates, deadlines, and procedures related to Confirmation of this Plan.

32. ***Cure Amount*** means all costs required of the Debtors to cure any and all monetary defaults, including pecuniary losses, under an Assumed Contract pursuant to section 365 of the Bankruptcy Code, which shall be set forth in the Schedule of Assumed Executory Contracts and Unexpired Leases or such other notice pursuant to the Solicitation Order.

33. ***Debtors*** means each of White Rock Medical Center, LLC and the above captioned debtors in possession other than NCP Management, LLC.

34. ***Definitive Documents*** means all documents, instruments, deeds, notifications, agreements, and filings related to documentation, implementation, and consummation of the transactions contemplated herein, including, without limitation: (a) this Plan (including all exhibits and supplements thereto); (b) the Disclosure Statement; (c) the Confirmation Order and pleadings in support of entry of the Confirmation Order, (d) the Restructuring Term Sheet; and (e) all other material documents necessary or customarily required to consummate the transactions contemplated herein and in the case of all such documents described in clauses (a) through (d) consistent in all respects with all other terms and provisions of this Plan, and, except as otherwise set forth herein, reasonably acceptable in form and substance to the Plan Sponsor.

35. ***Dext*** means Dext Capital, LLC.

36. ***DIP Claim*** means any Claim in respect of the obligations of the Debtors pursuant to the DIP Documents, including all interest, fees, and other expenses owing under the DIP Documents and in accordance therewith, held by, or otherwise owing to the DIP Lender.

37. ***DIP Documents*** means, collectively, the documents governing the DIP Facility provided to the Debtors by the DIP Lender.

38. ***DIP Facility*** means, collectively the postpetition debtor in possession financing facilities of the Debtors approved pursuant to the DIP Order by the Bankruptcy Court.

39. ***DIP Lender*** means the lender under the DIP Documents and any successors and permitted assigns.

40. ***DIP Order*** means, as applicable, the interim or final orders entered by the Bankruptcy Court at Docket Numbers 313 and 338 approving the DIP Facility and authorizing entry into the DIP Documents.

41. ***Disallowed*** means all or such part of a Claim (a) that is disallowed under this Plan, by a Final Order of the Bankruptcy Court or other court of competent jurisdiction, or pursuant to a settlement or stipulation pursuant to the authority of the Debtors or the Plan Administrator; (b) is listed on the Schedules as zero or as contingent, disputed or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order or otherwise deemed timely filed under applicable law or the Plan; (c) is not listed on the Schedules and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order or otherwise deemed timely filed under applicable law or the Plan; (d) has been withdrawn by agreement of the Debtors and the Holder thereof; or (e) has been withdrawn by the Holder thereof.

42. ***Disclosure Statement*** means the disclosure statement for this Plan (including all exhibits and schedules thereto) as amended, modified, or supplemented from time to time, and distributed contemporaneously herewith.

43. ***Disputed Claim*** means (a) any Claim as to which the Debtor, the Plan Administrator or other party in interest have interposed an objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, or any Claim otherwise disputed by the Debtor, Plan Administrator, or other party in interest in accordance with applicable law, which objection has not been withdrawn or determined by a Final Order; (b) any Claim scheduled by the Debtor as contingent, unliquidated, or disputed; (c) any Claim which amends a claim scheduled by the Debtor as contingent, unliquidated, or disputed; or (d) any Claim prior to it having become an Allowed Claim.

44. ***Distribution Date*** means a date or dates, as determined by the Plan Administrator in accordance with the terms of this Plan, on which the Plan Administrator makes a distribution to Holders of Allowed Claims. The first Distribution Date shall occur on the Disbursement Commencement Date.

45. ***Distribution Record Date*** means the date for determining which Holders of Claims are eligible to receive distributions under this Plan, which date shall be the Confirmation Date or such other date as designated in a Final Order of the Bankruptcy Court.

46. ***Disbursement Commencement Date*** means the later of (a) the date that is eighteen (18) months after the Effective Date, and (b) the Claims Reconciliation Date.

47. ***Dr. Mirza N. Baig*** means Dr. Mirza N. Baig, an individual.

48. ***Effective Date*** means the date that is a Business Day, on which (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent specified in Article IX of the Plan have become satisfied or waived in accordance with the Plan; and (c) the Plan is declared effective. Without limiting the foregoing, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

49. ***Entity*** means "entity" as defined in section 101(15) of the Bankruptcy Code.

50. ***Equipment Lenders*** means any Holder of an Equipment Loan Claim.

51. ***Equipment Lender Loan Documents*** means, with respect to each Equipment Lender, the loan agreements, promissory notes, security agreements, and all other agreements, instruments, and documents executed in connection with such Equipment Lender's prepetition extension of credit to the Debtors, as in effect immediately prior to the Petition Date.

52. ***Equipment Lender Cramdown Note*** means a promissory note issued by the Reorganized Debtor to an Equipment Lender that rejects the Plan, on the terms set forth in Section 3.3(d) of this Plan.

53. ***Equipment Loan Claim*** means a Claim that is included in Schedule D on any of the Debtors' Schedules, except that "Equipment Loan Claim" does not include the Secured Lender Claim.

54. ***Estates*** means the estates of the Debtors created under section 541 of the Bankruptcy Code.

55. ***Exculpated Parties*** means the Debtors and the Chief Restructuring Officer.

56. ***Executory Contract*** means a contract to which a Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

57. ***Exhibit*** means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement, as amended, modified, or supplemented from time to time.

58. ***Existing Equity Interests*** means all existing equity Interests in the Debtors as of the Petition Date.

59. ***Final Order*** means an order or judgment, the operation or effect of which has not been reversed, stayed, modified, or amended, and as to which order or judgment (or any reversal, stay, modification, or amendment thereof) (a) the time to appeal, seek certiorari, or request re-argument or further review or rehearing has expired and no appeal, petition for certiorari, or request for re-argument or further review or rehearing has been timely filed, or (b) any appeal that has been or may be taken or any petition for certiorari or request for re-argument,

further review, or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was sought, or to which the request was made, and no further appeal, petition for certiorari, or request for re-argument, further review, or rehearing has been or can be taken or granted.

60.     ***General Bar Date*** means April 2, 2026, at 5:00 p.m. (prevailing Central Time), the date by which each Holder of a Claim against the Debtors must file a Proof of Claim unless such Claim falls within one of the exceptions set forth in the Bar Date Order.

61.     ***General Unsecured Claim*** means any Claim against the Debtors, held by a creditor that furnished goods or services to the Debtors and excluding any Administrative Claims, DIP Claims, Professional Fee Claims, U.S. Trustee Fees, Priority Tax Claims, or Other Priority Claims as of the Petition Date that is neither secured by collateral nor entitled to priority under the Bankruptcy Code or any Final Order of the Bankruptcy Court.

62.     ***Government Agreements*** means individually or collectively, depending on the context, the (i) HHSC-OIG Settlement Agreement; (ii) OAG Franchise Tax Agreement; (iii) Parkland Payment and Forbearance Agreement; and (iv) HHSC UC DY10 and UC DY12 Agreement.

63.     ***Governmental Unit*** has the meaning set forth in section 101(27) of the Bankruptcy Code.

64.     ***GUC Distribution Pool*** means the aggregate sum of one million dollars ($1,000,000.00) funded by the Plan Funding.

65.     ***HHSC*** means the Texas Health and Human Services Commission.

66.     ***HHSC-OIG Settlement Agreement*** means the settlement agreement effective November 1, 2024, between White Rock Medical Center LLC and HHSC, an agency of the State of Texas, acting through HHSC's Office of Inspector General.

67.     ***HHSC UC DY10 and UC DY12 Agreement*** means the settlement agreement between City Hospital White Rock and HHSC dated August 5, 2025.

68.     ***Holder*** means a holder of a Claim or Interest, as applicable.

69.     ***Hospital Lease*** means, collectively: (1) the ground lease between debtor White Rock Medical Center, LLC and landlord GMR East Dallas Land, LLC dated March 1, 2018 (as amended); and (2) the hospital lease between debtor White Rock Medical Center, LLC and landlord GMR East Dallas Hospital, LLC dated March 1, 2018 (as amended).

70.     ***Hospital Lease Cure Payment*** means the stipulated cure amount of $2,603,803.42 paid to the Landlord pursuant to 11 U.S.C. § 365(b)(1)(A) to assume the Hospital Lease in accordance with the Hospital Lease Cure Schedule; for the sake of clarity, Landlord's acceptance of the Hospital Lease Cure Payment shall not constitute a waiver, discharge, or release of any claims against any third-party co-obligors on the Hospital Lease, including but not limited

to any guarantor(s), for any remaining deficiency due under the Hospital Lease after applying the Hospital Lease Cure Payment.

71.     *Hospital Lease Cure Schedule* means the schedule of payments governing the payment of the Hospital Lease Cure Payment by the Plan Sponsor or Reorganized Debtor, as applicable, to the Landlord which shall be included in the Plan Supplement.

72.     *Huntington* means The Huntington National Bank.

73.     *Impaired* means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

74.     *Intercompany Claim* means any and all of the Debtors' Claims against another Debtor or a non-Debtor Affiliate.

75.     *Interest* means any equity security, including a limited liability company membership interest, as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors, together with any warrants, options, or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto.

76.     *IRS* means the Internal Revenue Service.

77.     *JB&B* means JB&B Capital, LLC.

78.     *Landlord* means collectively GMR East Dallas Hospital and GMR East Dallas Land.

79.     *Lien* has the meaning set forth in section 101(37) of the Bankruptcy Code.

80.     *Liquidating Debtors* means each Debtor other than White Rock Medical Center LLC.

81.     *New Securities* means interests in the Reorganized Debtor issued to the Plan Sponsor or DIP Lender, as applicable, pursuant to this Plan and the Confirmation Order.

82.     *OAG Franchise Tax Agreement* means the settlement agreement between the State of Texas, acting on behalf of the Texas Comptroller of Public Accounts and Heights Healthcare of Texas LLC for the payment of franchise tax liability for the report years of 2019 through 2022.

83.     *Other Priority Claim* means any Claim against the Debtors accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim, DIP Claim, or Priority Tax Claim.

84.     *Parkland Payment and Forbearance Agreement* means the agreement between Dallas County Hospital District d/b/a Parkland Health and White Rock Medical Center LLC effective October 3, 2025.

85.     *Person* means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, committee, or other entity.

86.     *Petition Date* means collectively January 20, 2026, and January 21, 2026.

87.     *Plan* means this chapter 11 plan of reorganization, including the Exhibits and all supplements, appendices, and schedules hereto, either in its current form or as the same may be altered, amended, supplemented, or modified from time to time.

88.     *Plan Administrator* means an entity designated by the Debtors in the Plan Supplement, in its capacity as a plan administrator under this Plan, pursuant to the terms of the Plan Administrator Agreement.

89.     *Plan Administrator Funding* means an amount up to $528,092, or such other amount as may be agreed to by the Plan Sponsor and the Plan Administrator, to be contributed to the Plan Administrator Reserve from the Plan Funding. To the extent the Plan Funding is insufficient to fund the Plan Administrator Funding in full after satisfaction of the other obligations of the Debtors under this Plan, the Plan Sponsor shall fund any such shortfall by contributing additional Cash to the Plan Administrator Reserve on or before the Effective Date (or, if such shortfall becomes apparent after the Effective Date, as soon as reasonably practicable after written request from the Plan Administrator to the Plan Sponsor identifying the shortfall in reasonable detail, but in no event later than ten (10) business days after such request) (any such additional contribution, a "Supplemental PA Contribution"). Any Supplemental PA Contribution shall be subject to the reversion provisions of Section 5.5 of this Plan.

90.     *Plan Administrator Reserve* means reserve established to fund the post-Effective Date duties of the Reorganized Debtor and the Plan Administrator that are set forth in the Plan for the wind-down of the Liquidating Debtors' Estates, the payments provided for under this Plan and the satisfaction and closing of the Chapter 11 Cases.

91.     *Plan Funding* means (i) the $3,300,000.00 provided by the Plan Sponsor to the Reorganized Debtor prior to the Effective Date to fund the operating costs of the Reorganized Debtor and the distributions to be made pursuant to this Plan, (ii) any proceeds from the liquidation of Assets, and (iii) any Supplemental PA Contribution.

92.     *Plan Sponsor* means White Rock Medical Holdings LLC, a Delaware limited liability company.

93.     *Plan Supplement* means any supplement to this Plan, and the compilation of documents, forms of documents, and Exhibits to this Plan, as amended, modified, or supplemented from time to time, initial drafts of which shall be filed by the Debtors in consultation with the Plan Sponsor fourteen (14) days prior to the voting deadline, which shall include, among other things, the Schedule of Assumed Executory Contracts and Unexpired Leases and the Hospital Lease Cure Schedule.

94.     *Pipeline Adversary Proceeding* means the adversary proceeding captioned *White Rock Medical Center, LLC, et al. v. SRC Hospital Investments I, LLC and Pipeline Health*

- 10 -

*System Holdings, LLC*, Adversary Proceeding No. 26-03140, pending in the Bankruptcy Court, including any amendments thereto and any related proceedings, claims, counterclaims, defenses, and remedies asserted or assertable therein.

95.     *Priority Tax Claim* means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

96.     *Pro Rata Share* means the proportion that an Allowed Claim or Interest, as applicable, in a particular Class or Classes bears to the aggregate amount of Allowed Claims within such Class or Classes.

97.     *Professional* means any Entity or Person employed in these Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 328, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330, or 363 of the Bankruptcy Code or otherwise.

98.     *Professional Fee Claim* means a Claim by a Professional seeking an award by the Bankruptcy Court for compensation for services rendered (including transaction fees and success fees) or reimbursement of expenses incurred after the Petition Date and prior to and including the Effective Date, under sections 328, 330, 331 or 503(b)(2) of the Bankruptcy Code, as applicable.

99.     *Professional Fee Claims Bar Date* means the deadline for filing all applications for Professional Fee Claims on a final basis, which shall be forty-five (45) days after the Effective Date.

100.     *Proof of Claim* means a written proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

101.     *Reinstated Equipment Lender* means any Equipment Lender designated as a "Reinstated Equipment Lender" in the Debtors' Disclosure Statement.

102.     *Reinstated Equipment Loan Claims* means the Equipment Loan Claim of any Reinstated Equipment Lender.

103.     *Reinstated Equipment Loan Documents* means, with respect to each Reinstated Equipment Lender, the Equipment Lender Loan Documents of such Reinstated Equipment Lender, as reinstated in accordance with Section 3.3(c) of this Plan.

104.     *Related Parties* means, subject to any exclusions expressly set forth in the Plan, (a) any Entity or Person; (b) such Entity's or Person's predecessors, predecessors in interest, successors and assigns, parents, owners, subsidiaries, affiliates, affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, sub-advisors, or managers; (c) with respect to each of the foregoing in clauses (a) and (b), such Entity's or Person's respective current and former officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly, and any fund managers, fiduciaries, or other agents with any involvement related to the Debtor), members, partners, employees, agents, sub-agents, trustees, advisory board members, financial advisors, attorneys,

- 11 -

accountants, actuaries, managers, investment managers, investment bankers, consultants, representatives, management companies, fund advisors and other professionals; and (d) with respect to each of the foregoing in clauses (a)–(c), such Entity's or Person's respective heirs, executors, estates, servants, and nominees.

105.     ***Released Parties*** means each of the following, solely in its capacity as such: (a) the Debtors, (b) Plan Sponsor, (c) the DIP Lender, (d) each of the Supporting Creditors, (e) solely as and to the extent provided in the Settlement Agreement, the Resigning Employees, (f) solely as and to the extent provided in the Settlement Agreement, Dr. Mirza N. Baig and (g) with respect to each of the foregoing in clauses (a)–(f), each of their Related Parties.

106.     ***Releasing Parties*** means each of the following, solely in its capacity as such: (a) the Debtors, (b) Plan Sponsor, (c) the DIP Lender, (d) each of the Supporting Creditors, and (e) Holders of Claims that accept the Plan.

107.     ***Reorganized Debtor*** means White Rock Medical Center, LLC on and after the Effective Date.

108.     ***Reorganized Debtor Operating Agreement*** means the limited liability company agreement for the Reorganized Debtor, which shall include the identities of the initial board of the Reorganized Debtor that may be executed in connection with the Restructuring Transaction, the form of which shall be included in the Plan Supplement.

109.     ***Resigning Employees*** means each of the individuals identified on Schedule 1 to the Settlement Agreement, each of whom resigned from his or her positions with the Debtors pursuant to the Settlement Agreement.

110.     ***Restructured Equipment Lender*** means any Equipment Lender designated as a "Restructured Equipment Lender" in the Debtors' Disclosure Statement.

111.     ***Restructured Equipment Loan Claims*** means the Equipment Loan Claim of a Restructured Equipment Lender.

112.     ***Restructured Equipment Note Terms*** means, unless the Debtors or Reorganized Debtor, as applicable, and the applicable Equipment Lender agree otherwise, the terms of the applicable Equipment Lender Loan Documents, as deemed modified in the following respects: (a) the maturity date under such Equipment Lender Loan Documents shall be extended by a number of months equal to the number of calendar months elapsed from January 1, 2026, through and including the last day of the calendar month in which the Effective Date occurs (such number of months, the "***Extension Period***"), and the maturity date as so extended shall be the "***Restructured Maturity Date***" for purposes of this Plan; (b) any amortization schedule set forth in such Equipment Lender Loan Documents shall be recalculated to provide for the full amortization of the applicable outstanding principal balance over the remaining term from the Effective Date through the Restructured Maturity Date, with payments to be made at the same intervals as provided in the original Equipment Lender Loan Documents; (c) the applicable non-default rate of interest in effect under such Equipment Lender Loan Documents as of the Effective Date shall apply from and after the Effective Date unless and until an Event of Default (as defined in the applicable Equipment Lender Loan Documents) occurs after the Effective Date, at which time the

default rate of interest, if any, provided for under such Equipment Lender Loan Documents shall apply in accordance with the terms thereof; and (d) any and all Events of Default (as defined in the applicable Equipment Lender Loan Documents) existing as of the Effective Date, including any Events of Default arising from the commencement or pendency of the Chapter 11 Case or the Debtor's financial condition, shall be deemed cured and of no further force or effect as of the Effective Date. The terms of the Restructured Equipment Note Terms will be disclosed in the Plan Supplement.

113.    ***Restructuring Term Sheet*** means that certain restructuring term sheet executed as of June 16, 2026, by and between the Debtors and the Supporting Creditors.

114.    ***Restructuring Transaction*** means the issuance of ownership interests in the Reorganized Debtor, including under 11 U.S.C. § 1123(a)(5)(J), to the Plan Sponsor whereby the Plan Sponsor shall become the sole member of the Reorganized Debtor.

115.    ***Schedule of Assumed Executory Contracts and Unexpired Leases*** means any schedule (including any amendments or modifications thereto) of certain Executory Contracts and Unexpired Leases to be assumed or assumed and assigned by the Debtors pursuant to this Plan, as set forth in the Plan Supplement, as may be amended from time to time prior to the Confirmation Date.

116.    ***Schedules*** means, collectively, the schedules of assets and liabilities and statements of financial affairs filed by the Debtors [Docket Nos. 125-131, 133-139] pursuant to section 521 of the Bankruptcy Code and the Bankruptcy Rules, as the same may be amended, supplemented, or modified from time to time.

117.    ***Section 510(b) Claim*** means any Claim against any Debtor arising from rescission of a purchase or sale of a security of one of the Debtors or an Affiliate of the Debtors, for damages arising from the purchase or sale of such security, or for reimbursement or contribution Allowed under section 502 of the Bankruptcy Code on account of such a Claim.

118.    ***Secured Claim*** means a Claim against any of the Debtors (other than Administrative Claims, DIP Claims, Priority Tax Claims, Other Priority Claims or Intercompany Claims), that is secured by a Lien on property in which the Debtors' Estates have an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) or 1129(b) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code. For the avoidance of doubt, the Secured Lender Claim is deemed to be a Secured Claim.

119.    ***Secured Lender*** means SRC Hospital Investments I, LLC.

120.    ***Secured Lender Claims*** means the Secured Claim of the Secured Lender set forth in Proof of Claim No. 10187, as may be amended or modified from time to time which shall be an Allowed Claim in the amount of $7,442,001.20 inclusive of all fees, postpetition interest, attorneys' fees and expenses.

121.    ***Securities Act*** means the Securities Act of 1933, 15 U.S.C. §§ 77a- 77aa, as now in effect or hereafter amended.

122.    ***Settlement Agreement*** means that certain Settlement Agreement Pursuant to Bankruptcy Rule 9019, dated as of June 11, 2026 [Docket No. 317], by and among the Debtors, the Plan Sponsor, the Supporting Creditors, Dr. Mirza N. Baig, and the Resigning Employees, as approved by the Bankruptcy Court [Docket No. 337] and as may be amended, modified, or supplemented from time to time.

123.    ***Solicitation Order*** means one or more orders of the Bankruptcy Court approving the Disclosure Statement on a conditional basis as providing "adequate information" within the meaning of section 1125(a) of the Bankruptcy Code and establishing certain dates, deadlines, and procedures related to Confirmation of this Plan.

124.    ***Subordinated Claim*** means, collectively, Section 510(b) Claims.

125.    ***Supplemental PA Contribution*** has the meaning ascribed to such term in the definition of Plan Administrator Funding.

126.    ***Supporting Creditors*** means, collectively, SRC Hospital Investments I, LLC; Pipeline Health Systems Holdings, LLC; REILS SPV FINANCE INC.; Strategic Management and Capital LLC; and Strategic Solutions LLC.

127.    ***Unimpaired*** means a Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

128.    ***U.S. Trustee*** means the Office of the United States Trustee for the Southern District of Texas.

129.    ***U.S. Trustee Fees*** means all fees, interest, and charges assessed against the Estates by the U.S. Trustee pursuant to 28 U.S.C. § 1930 and 31 U.S.C. § 3717.

130.    ***Waiving Supporting Creditors*** means each of REILS SPV Finance Inc. and Strategic Management and Capital, LLC.

(b)    ***Rules of Interpretation***. For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that Person's or Entity's successors and assigns; (e) all references in this Plan to Sections and Articles are references to Sections and Articles of or to this Plan; (f) the words "herein," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a

- 14 -

part of or to affect the interpretation of this Plan; (h) subject to the provisions of any contract, certificates of incorporation, by-laws, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (j) "including" and "include" means "including without limitation" and "include without limitation", respectively; and (k) with reference to any distribution under this Plan, "on" a date means on or as soon as reasonably practicable after that date.

(c)      *Computation of Time*. In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006(a) shall apply.

(d)      *Exhibits*. All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court. Holders of Claims and Interests may obtain a copy of the Exhibits upon written request to the Debtors or on the Debtors' website for these Chapter 11 Cases. Upon their filing, the Exhibits may be inspected (a) in the office of the clerk of the Bankruptcy Court or its designee during normal business hours; (b) on the Bankruptcy Court's website at https://www.txs.uscourts.gov/page/bankruptcy-court (registration required) or free of charge on the Debtors' case website at https://dm.epiq11.com/case/whiterockmedicalcenter/info. The documents contained in the Exhibits shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

(e)      *Controlling Document*. In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of this Plan shall control in all respects.  In the event of an inconsistency between this Plan and any document included in the Plan Supplement, the terms of the document in the Plan Supplement shall control (unless stated otherwise in such document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and this Plan, the Confirmation Order shall control.

## ARTICLE II

### ADMINISTRATIVE EXPENSES AND OTHER UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims (including, Professional Fee Claims and U.S. Trustee Fees), DIP Claims, and Priority Tax Claims are not classified and are not entitled to vote on this Plan.

**2.1** *Administrative Claims*.

(a)      Except with respect to Professional Fee Claims, unless the Holder of an Allowed Administrative Claim agrees to less favorable treatment of such Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which an Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date on which an Allowed Administrative Claim becomes payable under any agreement relating thereto, each

- 15 -

Holder of an Allowed Administrative Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Allowed Administrative Claim, Cash equal to the unpaid portion of such Allowed Administrative Claim.

(b)      To the extent not already asserted in the Chapter 11 Cases pursuant to a timely filed Proof of Claim in accordance with the Bar Date Order, all requests for allowance and payment of Administrative Claims (other than (i) Professional Fee Claims (such claims are subject to the Professional Fee Claims Bar Date), (ii) Claims asserted under section 503(b)(9) of the Bankruptcy Code (such Claims are subject to the General Bar Date), (iii) U.S. Trustee Fees, (iv) Administrative Claims that have been Allowed on or before the Effective Date, and (v) Administrative Claims that were already asserted in the Chapter 11 Cases pursuant to a timely Proof of Claim in accordance with the Bar Date Order), must be filed and served on the Debtors and the Plan Sponsor, or, after the Effective Date, the Plan Administrator, and its counsel, so as to actually be received on or before the Administrative Claims Bar Date. The notice of the occurrence of the Effective Date shall set forth the Administrative Claims Bar Date and shall constitute notice thereof. For the avoidance of doubt, Holders of Administrative Claims based on liabilities incurred by the Debtors in the ordinary course of business after the Petition Date must file and serve a request for payment of such Administrative Claim by the applicable Administrative Claims Bar Date.

(c)      After notice and a hearing, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with, a Final Order.

(d)      Holders of Administrative Claims (other than (i) Professional Fee Claims, (ii) Claims asserted under section 503(b)(9) of the Bankruptcy Code, (iii) U.S. Trustee Fees, (iv) Administrative Claims that have been Allowed on or before the Effective Date, and (v) Administrative Claims that were already asserted in the Chapter 11 Cases pursuant to a timely filed Proof of Claim in accordance with the Bar Date Order), that do not file and serve a request for allowance and payment of an Administrative Claim by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting Administrative Claims against the Debtors, Plan Administrator, the Debtors' Estates, or their assets and properties, and any Administrative Claims shall be deemed Disallowed as of the Effective Date without the need for any notices, objection, or other action from the Debtors or the Plan Administrator, as applicable, or any action or approval of the Bankruptcy Court.

## 2.2    *DIP Claims*.

(a)      All DIP Claims shall be deemed Allowed as of the Effective Date in an amount equal to the aggregate amount of the DIP Facility obligations approved by the Bankruptcy Court, including, (i) the principal amount outstanding under the DIP Facility on such date, (ii) all interest accrued and unpaid thereon through and including the date of payment, and (iii) all accrued fees, expenses, and indemnification obligations payable under the DIP Documents.

(b)      On the Effective Date or as soon as reasonably practicable thereafter, except to the extent a Holder of an Allowed DIP Claim agrees to a less favorable treatment of such Claim, each Holder of an Allowed DIP Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Allowed DIP Claim, at the election

of the Holder of said Allowed DIP Claim, either (a) Cash equal to the unpaid portion of such Allowed DIP Claim or (b) a portion of the New Securities as agreed to by the Plan Sponsor and the DIP Lender.

(c)     Contemporaneously with the receipt by the Holder of an Allowed DIP Claim of the foregoing treatment, the DIP Facility and DIP Documents shall be deemed terminated without further action by the DIP Lender.  The DIP Lender shall take all actions to effectuate and confirm such termination as reasonably requested by the Debtors, Plan Sponsor or Plan Administrator as applicable.

**2.3**     ***Priority Tax Claims***. Unless the Holder of an Allowed Priority Tax Claim agrees to less favorable treatment of such Claim, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Allowed Priority Tax Claims, either (a) payment in full in Cash, on or as soon as reasonably practicable after the latest of (i) the Effective Date, or (ii) the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim, (b) payment upon such other terms as agreed between the Debtors and each Holder of such Allowed Priority Tax Claim, or (c) to the extent permitted by section 1129(a)(9)(C) of the Bankruptcy Code, deferred Cash payments made in regular installments over a period ending not later than five (5) years after the Petition Date, together with interest at the applicable statutory rate, of a total value, as of the Effective Date, equal to the Allowed amount of such Priority Tax Claim. Consistent with the Settlement Agreement, the Reorganized Debtor shall assume liability for all Allowed Priority Tax Claims against the Debtors and all related payment plan agreements.

**2.4**     ***Professional Fee Claims***.

(a)     All applications for allowance and payment of Professional Fee Claims by Professionals for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed on or before the Professional Fee Claims Bar Date.  If an application for a Professional Fee Claim is not filed by the Professional Fee Claims Bar Date, such Professional Fee Claim shall be deemed waived, and the Holder of such Claim shall be forever barred from receiving payment on account thereof.  The notice of the occurrence of the Effective Date shall set forth the Professional Fee Claims Bar Date and shall constitute notice thereof. Objections to any Professional Fee Claims must be filed and served on the Plan Administrator and the requesting Professional, no later than twenty-one (21) days after service of the applicable final application for allowance and payment of Professional Fee Claims.

(b)     Unless otherwise agreed to (i) by the Debtors and the Professional prior to the Effective Date or (ii) by the Plan Administrator and the Professional after the Effective Date, the amount of Professional Fee Claims owing to such Professional that are Allowed by Final Order shall be paid in full in Cash by the Plan Administrator as soon as reasonably practicable after its Professional Fee Claims are Allowed by Final Order, (x) *first*, by application of any retainer monies held by such Professional, and (y) *second*, once such retainer balance is exhausted, the Plan Administrator shall pay such Professional the remaining balance of its Allowed Professional Fee Claim in Cash.

(c)     Professionals shall reasonably estimate their unpaid Professional Fee Claims incurred prior to the Confirmation Hearing and for fees and expenses estimated to be incurred at and after the Confirmation Hearing and through the Effective Date and shall deliver such estimate to the Plan Sponsor no later than the date of the Confirmation Hearing; provided, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims.

**2.5     *Post-Effective Date Fees and Expenses***. Except as otherwise specifically provided in this Plan, from and after the Effective Date, the Plan Administrator shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to these Chapter 11 Cases that are incurred after the Effective Date. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention of compensation for services rendered after such date shall terminate, and the Plan Administrator may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court; provided, that, a Professional must enter into a new engagement agreement with the Plan Administrator in order to be compensated for services rendered after the Effective Date.

## ARTICLE III

### CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

**3.1     *Classification in General***. Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtors. A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

**3.2     *Summary of Classification***. The following table designates the Classes of Claims against and Interests in the Debtors and specifies which of those Classes are (a) Impaired or Unimpaired by this Plan, (b) entitled to vote to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code, and (c) presumed or deemed to accept or reject this Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in this Section 3.2.

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Other Priority Claims | Unimpaired | No (Presumed to Accept) |
| Class 2 | Secured Lender Claims | Impaired | Yes |

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 3 | Reinstated Equipment Loan Claims | Unimpaired | No (Presumed to Accept) |
| Class 4 | Restructured Equipment Loan Claims | Impaired | Yes |
| Class 5 | General Unsecured Claims | Impaired | Yes |
| Class 6 | Existing Equity Interests | Impaired | No (Deemed to Reject) |

**3.3**    *Treatment of Classes*.

(a)    Class 1 – Other Priority Claims

(i)    *Claims in Class*: Class 1 consists of all Other Priority Claims against the Debtors.

(ii)    *Treatment*: Unless the Holder of an Allowed Other Priority Claim agrees to less favorable treatment of such Claim, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Allowed Other Priority Claim Cash in an amount equal to the Allowed amount of such Allowed Other Priority Claim as soon as reasonably practicable after the latest of (A) the Effective Date, (B) the date that such Claim becomes an Allowed Other Priority Claim, and (C) a date agreed to by the Plan Sponsor and the Holder of such Allowed Other Priority Claim.

(iii)    *Voting*: Claims in Class 1 are Unimpaired, and Holders of Allowed Other Priority Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Other Priority Claims are not entitled to vote to accept or reject this Plan.

(b)    *Class 2 – Secured Lender Claims*

(i)    *Claims in Class*: Class 2 consists of Secured Lender Claims against the Debtors.

(ii)    *Treatment*: Unless the Holder of an Allowed Secured Lender Claim and the Debtors agree to other treatment of such Secured Lender Claim, each Holder of an Allowed Secured Lender Claim shall receive, the following in full and

final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Allowed Secured Lender Claim.

(1) On the Effective Date, all liens provided for in the Cash Collateral Orders shall remain in full force, and effect and priority until such claim is paid in full;

(2) Dismissal, with prejudice, of the Pipeline Adversary Proceeding; and

(3) The Secured Lender shall be provided with five percent (5%) of all gross revenues of the Reorganized Debtor which will be applied to repayment of the Secured Lender Claim until such Claim has been paid in full. For purposes of this Plan "gross revenues" means all revenues, receipts, income, accounts, accounts receivable, and other sums generated or received by the Reorganized Debtor from the ownership or operation of the hospital and the Reorganized Debtor's business, including (t) patient service revenue, inpatient and outpatient services, emergency, surgery, imaging, laboratory, pharmacy, therapy, and other ancillary services, physician and clinic services billed and collected by the Reorganized Debtor; (u) all private or government payments including, without limitation, Medicare payments and reimbursements, Medicaid payments and reimbursements, commercial insurance payments and reimbursements, and managed care payments and reimbursements; (v) other third-party payor reimbursements; (w) self-pay collections, co-payments, and deductibles, grants, supplemental payments, settlements, refunds, and credits; (x) rental and other ancillary operating income; (y) insurance proceeds relating to lost revenue and proceeds of loans against the Secured Lender's collateral (other than the Secured Lender's loan); and (z) all proceeds of the foregoing, in each case before deduction of operating expenses, debt service, taxes, or other costs.

(iii) *Voting*: Claims in Class 2 are Impaired. Pursuant to section 1126 of the Bankruptcy Code, each Holder of an Allowed Secured Lender Claim is entitled to vote to accept or reject this Plan.

(c) *Class 3 – Reinstated Equipment Loan Claims*

(i) *Claims in Class:* Class 3 consists of all Reinstated Equipment Loan Claims against the Debtors.

(ii) *Treatment*: On the Effective Date, each Reinstated Equipment Lender's Equipment Loan Claim shall be reinstated and rendered unimpaired in accordance with section 1124 of the Bankruptcy Code. In furtherance thereof: (a) any and all defaults under the Reinstated Equipment Loan Documents, other than defaults of a kind specified in section 365(b)(2) of the Bankruptcy Code, shall be cured on or as soon as reasonably practicable after the Effective Date; (b) the

maturity of the Equipment Loan Claim of each Reinstated Equipment Lender shall be reinstated as such maturity existed before any default under the applicable Reinstated Equipment Loan Documents; (c) the legal, equitable, and contractual rights of each Reinstated Equipment Lender under the Reinstated Equipment Loan Documents shall not otherwise be altered by this Plan; (d) all liens and security interests held by each Reinstated Equipment Lender under the Reinstated Equipment Loan Documents shall remain in full force and effect, unaltered by this Plan or the Confirmation Order; and (e) the Reorganized Debtor shall continue to perform all obligations under the Reinstated Equipment Loan Documents in accordance with their terms from and after the Effective Date. For the avoidance of doubt, the Restructured Equipment Note Terms shall not apply to the Equipment Loan Claims of Reinstated Equipment Lenders, and the Reinstated Equipment Loan Documents shall continue in full force and effect in accordance with their original terms (as cured pursuant to this Section).

(iii)     *Voting:* Claims in Class 3 are Unimpaired, and Holders of Allowed Reinstated Equipment Loan Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Reinstated Equipment Loan Claims are not entitled to vote to accept or reject this Plan.

(d)     *Class 4 – Restructured Equipment Loan Claims*

(i)     *Claims in Class*: Class 4 consists of the Restructured Equipment Loan Claims against the Debtors. Each Holder of a Restructured Equipment Loan Claim in Class 4 shall be deemed to constitute a separate subclass of Class 4 for voting and treatment purposes. Each such subclass shall be treated as a separate class for purposes of determining acceptance or rejection of this Plan under section 1126 of the Bankruptcy Code and for purposes of the cramdown provisions of section 1129(b) of the Bankruptcy Code. The vote of each such subclass to accept or reject this Plan shall be determined solely by reference to the vote of the Holder of the Restructured Equipment Loan Claim in such subclass.

(ii)     *Treatment*: On the Effective Date, Holders of an Allowed Restructured Equipment Loan Claims shall receive the following treatment:

(1)     if such Holder accepts the Plan, such Holder shall receive, in full and final satisfaction, settlement, release, and discharge of its Equipment Loan Claim, treatment on substantially the same terms and conditions as set forth in such Holder's Equipment Lender Loan Documents, except that the Restructured Equipment Note Terms shall apply to such Equipment Lender Loan Documents. On the Effective Date, the Equipment Lender Loan Documents of each accepting Equipment Lender shall be deemed modified and amended to incorporate the Restructured Equipment Note Terms without the need for the execution of any amendment or modification agreement, and the Reorganized Debtor and such

- 21 -

Holder shall be bound by the Equipment Lender Loan Documents as so modified. For the avoidance of doubt, all liens and security interests granted to an accepting Equipment Lender under its Equipment Lender Loan Documents shall remain in full force and effect following the Effective Date, subject to the terms of such Equipment Lender Loan Documents as modified by the Restructured Equipment Note Terms.

(2)     if such Holder rejects the Plan, the Reorganized Debtor shall execute and deliver to each rejecting Equipment Lender an Equipment Lender Cramdown Note in a principal amount equal to the Allowed amount of such rejecting Equipment Lender's Secured Claim as determined under section 506(a) of the Bankruptcy Code. To the extent that a rejecting Equipment Lender holds an Allowed unsecured deficiency Claim under section 506(a) of the Bankruptcy Code, such deficiency Claim shall be treated as a General Unsecured Claim under Class 5 of this Plan. The Equipment Lender Cramdown Note shall be on substantially the same terms and conditions as such rejecting Equipment Lender's Equipment Lender Loan Documents, except that (i) the principal amount of the Equipment Lender Cramdown Note shall be as set forth in this Section 3.3(d)(ii)(2), and (ii) the Restructured Equipment Note Terms shall apply to the Equipment Lender Cramdown Note. Each Rejecting Equipment Lender shall retain its liens and security interests on the collateral securing its Equipment Loan Claim to the extent of the Allowed Secured Claim as determined under section 506(a) of the Bankruptcy Code.

(iii)     *Voting*: Claims in Class 4 are Impaired. Pursuant to section 1126 of the Bankruptcy Code, each Holder of an Allowed Restructured Equipment Loan Claim is entitled to vote to accept or reject this Plan.

(e)     *Class 5 – General Unsecured Claims*

(i)     *Claims in Class:* Class 5 consists of all General Unsecured Claims against the Debtors.

(ii)     *Treatment:* On the Effective Date or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment of such Claim, each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release and discharge of and in exchange for such Allowed General Unsecured Claim, its Pro Rata Share of the GUC Distribution Pool. Notwithstanding the foregoing, the treatment of the Class 5 General Unsecured Claims held by REILS SPV Finance Inc. and Strategic Management and Capital, LLC shall be subject to Section 5.21 (Waiver and Release of Supporting Creditor Unsecured Claims) of this Plan.

- 22 -

(iii)     *Voting:* Claims in Class 5 are Impaired. Pursuant to section 1126 of the Bankruptcy Code, each Holder of an Allowed General Unsecured Claim is entitled to vote to accept or reject this Plan.

(f)     *Class 6 – Existing Equity Interests*

(i)     *Interests in Class*: Class 6 consists of Existing Equity Interests.

(ii)     *Treatment*: On the Effective Date, each Allowed Existing Equity Interest shall be discharged, cancelled, released, and extinguished, without any distributions to Holders.

(iii)     *Voting*: Interests in Class 6 are Impaired. Each Holder of an Existing Equity Interest is conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Allowed Existing Equity Interests are not entitled to vote to accept or reject this Plan.

**3.4     *Special Provision Regarding Unimpaired Claims***. Except as otherwise provided in this Plan, nothing shall affect the Debtors', the Plan Sponsor's, or the Plan Administrator's rights and defenses, legal and equitable, with respect to any Unimpaired Claims, including but not limited to all rights with respect to legal and equitable defenses to setoffs against or recoupments of Unimpaired Claims.

**3.5     *Subordination of Claims***. Except as expressly provided herein, the Allowance, classification, and treatment of all Allowed Claims and Interests take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code or otherwise. To the extent any Section 510(b) Claim or other Subordinated Claim exists against any Debtor, such Claim shall be subordinated pursuant to section 510(b) of the Bankruptcy Code to all Claims other than Existing Equity Interests, and, unless otherwise ordered by the Bankruptcy Court, the Holder of such Subordinated Claim shall not receive or retain any property under this Plan on account of such Subordinated Claim.

## ARTICLE IV

### ACCEPTANCE OR REJECTION OF THIS PLAN

**4.1     *Acceptance by Class Entitled to Vote***. Classes 2, 4 and 5 are the Classes of Claims of the Debtors that are entitled to vote to accept or reject this Plan. Classes 2, 4 and 5 shall have accepted this Plan if (a) the Holders of at least two-thirds in amount of the Allowed Claims actually voting in each Class have voted to accept this Plan and (b) the Holders of more than one-half in number of the Allowed Claims actually voting in each Class have voted to accept this Plan, not counting the vote of any Holder designated under section 1126(e) of the Bankruptcy Code. If there are no votes cast in a particular Class, or a subclass in Class 4, that is entitled to vote on this Plan, then this Plan shall be deemed accepted by such Class.

**4.2**     *Presumed Acceptance of this Plan*. Classes 1 and 3 are Unimpaired. Therefore, holders of Claims in Class 1 and Class 3 are presumed to have accepted this Plan by operation of law and are not entitled to vote to accept or reject this Plan.

**4.3**     *Deemed Rejection of this Plan*. Class 6 is fully Impaired and will receive no recovery under this Plan. Therefore, holders of Interests in Class 6 are deemed to have rejected this Plan by operation of law and are not entitled to vote to accept or reject this Plan.

**4.4**     *Confirmation by Cramdown*. To the extent any Impaired Class entitled to vote does not accept this Plan, the Debtors request that the Bankruptcy Court confirm this Plan pursuant to section 1129(b) of the Bankruptcy Code, and the Debtors reserve the right to seek such nonconsensual confirmation. The Debtors intend to satisfy section 1129(a)(10) of the Bankruptcy Code through the acceptance of this Plan by at least one Class of Claims that is Impaired under this Plan and entitled to vote, determined without including any acceptance of this Plan by any Holder that is an insider within the meaning of section 101(31) of the Bankruptcy Code. For the avoidance of doubt, each subclass of Class 4 constitutes a separate Class for purposes of sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.

**4.5**     *Elimination of Classes*. To the extent applicable, any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed to have been deleted from this Plan for purposes of (a) voting to accept or reject this Plan and (b) determining whether it has accepted or rejected this Plan under section 1129(a)(8) of the Bankruptcy Code.

**4.6**     *Controversy Concerning Impairment*. If a controversy arises as to whether any Claims or Interests or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**4.7**     *Deemed Consent to Modification*. Each Equipment Lender that votes to accept this Plan in accordance with Section 3.3(d)(ii)(1) of the Plan shall be deemed to have consented to the modifications to its Equipment Lender Loan Documents effected by the Restructured Equipment Note Terms and shall execute and deliver such documents and instruments as may be reasonably necessary to effectuate such modifications. The Confirmation Order shall provide that, to the extent any Equipment Lender fails to execute any such documents, the Confirmation Order shall constitute and evidence such modifications and shall be binding on such Equipment Lender without further action.

### ARTICLE V

### MEANS FOR IMPLEMENTATION OF THIS PLAN

**5.1**     *Appointment of the Plan Administrator*.

(a)     On the Effective Date, the Plan Administrator shall be deemed the Estate's representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority, and responsibilities specified in the Plan, including, without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code.

(b)     On the Effective Date, the authority, power, and incumbency of the persons acting as directors and officers of the Debtors shall be deemed to have resigned, solely in their capacities as such.  From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Debtors in the same fiduciary capacity as applicable to a board of managers and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same) solely as to the implementation of this Plan, and for the avoidance of doubt shall have no operational control or authority over the Reorganized Debtor.

**5.2     *Powers and Duties of the Plan Administrator*.** The powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and wind down the Liquidating Debtors' affairs, including:

(a)     liquidating, receiving, holding, and investing, supervising, and protecting any remaining assets of the Liquidating Debtors after the Effective Date;

(b)     executing and delivering all documents and taking all actions necessary to consummate the Plan and wind up the Liquidating Debtors' affairs;

(c)     making distributions to holders of Allowed Claims as contemplated by the Plan;

(d)     establishing and maintaining bank accounts in the name of the Liquidating Debtors for the winding up of the Liquidating Debtors' affairs;

(e)     subject to the terms of this Plan, employing, retaining, terminating or replacing professionals to represent it with respect to its responsibilities or otherwise winding up the Liquidating Debtors' affairs;

(f)     preparing and filing tax returns and related forms and filings on behalf of the Liquidating Debtors, protesting or appealing any tax assessment, applying for or otherwise pursuing any Claim for any tax refund, rebate, or reduction, seeking a determination of tax liability under section 505 of the Bankruptcy Code or otherwise, and paying, or causing to be paid any taxes incurred by the Debtors before or after the Effective Date that are validly Allowed Claims;

(g)     compromising or settling any Claims or Interests or transferring, relinquishing, assigning, or otherwise disposing of any asset of the Liquidating Debtors without further approval of the Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules;

(h)     prosecuting, settling, compromising, abandoning, selling, assigning, transferring, or otherwise resolving or disposing of any and all Avoidance and Other Actions and any other Causes of Action belonging to the Debtors or their Estates, including, without limitation, actions arising under sections 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code and applicable non-bankruptcy law, in each case without further notice to or approval of the Bankruptcy Court;

(i)      coordinating the storage and maintenance of the Liquidating Debtors' books and records;

(j)      seeking entry of one or more final decrees closing the Chapter 11 Cases of White Rock Medical Center, LLC and any other Debtor whose Chapter 11 Case need not remain open for claims administration purposes, without prejudice to the Bankruptcy Court's retained jurisdiction under this Plan and the Confirmation Order or to the administration, objection, resolution, or payment of Claims against any Debtor through the Claims Administration Case, as soon as reasonably practicable after the Effective Date and substantial consummation of the Plan;

(k)      paying fees owed to the Office of the U.S. Trustee in accordance with applicable law for each Chapter 11 Case that remains open after the Effective Date and filing reports to show the calculation of such fees for such open Chapter 11 Cases until such Chapter 11 Case is converted, dismissed, or closed under section 350 of the Bankruptcy Code; provided, that after the Chapter 11 Case of White Rock Medical Center, LLC is closed, ordinary course operating receipts and disbursements of the Reorganized Debtor shall not be reported as disbursements in the Claims Administration Case except to the extent otherwise required by Final Order;

(l)      paying fees owed to the Office of the U.S. Trustee in accordance with applicable law and file reports to show the calculation of such fees for the Estates until the Chapter 11 Cases or Claims Administration Cases, as applicable, are closed under section 350 of the Bankruptcy Code; and

(m)      exercising such other powers as may be vested in it pursuant to an order of the Court or the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.

**5.3**      *Plan Administrator Compensation, Expenses, and Retention of Professionals*.

(a)      The Plan Administrator's compensation will be set forth in the Plan Administrator Agreement. The fees and expenses incurred by the Plan Administrator on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Plan Administrator in connection with such Plan Administrator's duties shall be paid without any further notice to or action, order, or approval of the Court in Cash from the Plan Administrator Reserve.

(b)      The Plan Administrator shall have sole right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties under the Plan and to otherwise to represent and wind down the affairs of the Liquidating Debtors after the Effective Date. The reasonable fees and expenses of such professionals shall be paid without any further notice to or action, order, or approval of the Court in Cash from the Plan Administrator Reserve or the Reorganized Debtor.

**5.4**      *Exculpation; Indemnification; Insurance; Liability Limitation*. The Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Debtors and their Estates. The Plan Administrator may rely upon

written information generated by the Debtors or the Reorganized Debtor as applicable.  For the avoidance of doubt, notwithstanding anything to the contrary contained herein, the Plan Administrator in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors or their Estates or the Reorganized Debtor as applicable.

**5.5** *Establishment of Plan Administrator Reserve*. On or before the Effective Date, the Debtors shall establish the Plan Administrator Reserve and such Plan Administrator Reserve shall be funded with the Plan Administrator Funding from the Plan Funding, in priority to any distributions on account of General Unsecured Claims in Class 5. If at any time after the Effective Date, the Plan Administrator determines in good faith that the funds remaining in the Plan Administrator Reserve are insufficient to satisfy the Plan Administrator's remaining duties and obligations under this Plan, the Plan Administrator shall provide written notice to the Plan Sponsor specifying the estimated shortfall and the basis therefor, and the Plan Sponsor shall fund such shortfall by making a Supplemental PA Contribution within ten (10) business days of receipt of such notice. The Plan Administrator's good faith determination of insufficiency shall be presumed reasonable absent a showing of fraud, willful misconduct, or gross negligence. To the extent that any funds remain in the Plan Administrator Reserve after payment of all fees and costs to be paid from the Plan Administrator Reserve pursuant to the Plan, including any amounts funded by a Supplemental PA Contribution, such excess funds shall revert to the Plan Sponsor.

**5.6** *Reorganized Debtor*.

(a) On the Effective Date, except as otherwise set forth herein, pursuant to sections 1141(b)–(c) of the Bankruptcy Code, the Debtors' Assets will vest in the Reorganized Debtor free and clear of all liens, Claims, and encumbrances.

(b) On the Effective Date, the authority, power, and incumbency of the persons acting as directors and officers of the Debtors shall be deemed to have resigned, solely in their capacities as such. From and after the Effective Date, the Plan Sponsor shall be the sole member of the Reorganized Debtor and shall appoint officers consistent with the Reorganized Debtor's corporate documents and the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same), including the Reorganized Debtor Operating Agreement.

(c) Immediately following the Effective Date, the Reorganized Debtor shall purchase and maintain a runoff or "tail" directors and officers insurance policy for a period of no less than five (5) years following the Effective Date, which policy shall be comparable in all material respects to the directors and officers insurance policy maintained by the Debtors immediately prior to the Effective Date and shall name Dr. Mirza N. Baig and each other Resigning Employee as insureds for acts or omissions occurring during their respective tenures with the Debtors, consistent with the Settlement Agreement.

(d) On the Effective Date, except as otherwise determined by the Plan Sponsor, the Reorganized Debtor will continue the employment of the Debtors' employees in the ordinary course of business, subject to the terms of applicable employment arrangements and personnel policies maintained by the Debtors immediately prior to the Effective Date. Wages, salaries, other

compensation and benefits of obligations of the Debtors' retained employees that are assumed or otherwise payable will be paid by the Reorganized Debtor in the ordinary course of the Reorganized Debtor's business. Notwithstanding the foregoing, after the Effective Date the Reorganized Debtor may maintain, modify, or terminate employee compensation, benefit, incentive, retention, and severance arrangements in a manner consistent with applicable law and the applicable organizational and operational requirements of the Reorganized Debtor's business.

**5.7**      ***Indemnification of Resigning Employees***. Consistent with, and to implement, the Settlement Agreement, (a) on and after the Effective Date, the Reorganized Debtor shall indemnify, defend, and hold harmless Dr. Mirza N. Baig and each other Resigning Employee on the terms, and subject to the conditions and the $700,000 aggregate Indemnity Cap, set forth in Section 6.1 of the Settlement Agreement; and (b) notwithstanding the foregoing Indemnity Cap, the Reorganized Debtor shall indemnify Dr. Mirza N. Baig with respect to any costs or liability relating to the equipment leases identified in the Settlement Agreement and the associated guaranties, without regard to the Indemnity Cap, so long as this Plan is confirmed and becomes effective. The releases provided in favor of the Resigning Employees under Article X of this Plan, and the directors and officers insurance required by Section 5.6(c) of this Plan, are intended to implement the corresponding provisions of the Settlement Agreement.

**5.8**      ***Restructuring Transactions***.

(a)      On the Effective Date, existing membership interests in White Rock Medical Center LLC will be cancelled and the New Securities shall be issued to the Plan Sponsor who shall become and be deemed the sole member of the Reorganized Debtor, *provided, however*, that at the direction of the Plan Sponsor, a portion of the New Securities may be issued to the Holders of Allowed DIP Claims in accordance with section 2.2(b) of this Plan. The Reorganized Debtor shall elect disregarded entity status for tax purposes under IRC §301.7701-3. The transactions contemplated in this Plan and the consideration received in connection therewith, shall be structured in a manner that (i) minimizes any current taxes payable as a result of the consummation of such transactions and (ii) optimizes the tax efficiency (including, but not limited to, by way of the preservation or enhancement of favorable tax attributes) of such transactions to the Debtors and the Plan Sponsor.

(b)      The Debtors, Reorganized Debtor or Plan Sponsor, as applicable, may, in their discretion, take such action as permitted by applicable law, including those the Debtors, Reorganized Debtor or Plan Sponsor determine are reasonable, necessary or appropriate to effectuate the Plan, including: (i) the execution and delivery of any appropriate agreements or other documents of formation, merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of this Plan and that satisfy the applicable requirements of applicable law; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of this Plan and having other terms for which the applicable parties agree; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; (iv) such other transactions that are required to effectuate this Plan; (v) all transactions necessary to provide for the purchase of some

or all of the assets of, or Interests in the Debtors which purchase may be structured as a taxable transaction for United States federal income tax purposes; (vi) all actions that the applicable Entities determine to be necessary to obtain the requisite regulatory approvals to effectuate this Plan; (vii) rejection or assumption, as applicable, of Executory Contracts and Unexpired Leases; and (viii) all other actions that the applicable Entities determine to be necessary, including making filings or recordings that may be required by applicable law in connection with this Plan, and such action and documents are deemed to require no further action or approval (other than any requisite filings required under the applicable state, provincial and federal or foreign law or such consent or consultation rights as set forth in the Plan).

(c)     Except as otherwise provided in this Plan, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, all the Debtors' Assets shall transfer to the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances, except for the Liens and Claims established under this Plan and subject to the assumed liabilities. On and after the Effective Date, except as otherwise provided in this Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and maintain, prosecute, abandon, compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, subject only to those restrictions expressly imposed by this Plan or the Confirmation Order, as well as the documents and instruments executed and delivered in connection therewith, including the documents, exhibits, instruments, and other materials comprising the Plan Supplement. For the avoidance of doubt, after the Effective Date, Cash generated from operation of the hospital shall be property of the Reorganized Debtor.

(d)     Notwithstanding the foregoing, on the Effective Date the Reorganized Debtor shall abandon the Bank of America Equipment pursuant to applicable nonbankruptcy law.

**5.9     *Sources of Cash for Distributions and Operations***. All Cash necessary for the Reorganized Debtor to make payments required by this Plan and for post-Confirmation operations shall be obtained from (a) existing Cash held by the Debtors on the Effective Date, (b) Cash generated from the Reorganized Debtor's operations after the Effective Date in the ordinary course of business, and (c) the Plan Funding. Within two (2) business days after entry of the Confirmation Order, the Plan Sponsor will transfer the Plan Funding (other than any Supplemental PA Contribution) to the Debtors for use in accordance with the terms of this Plan; any Supplemental PA Contribution shall be funded in accordance with the terms of this Plan.

**5.10     *Cancellation of Existing Securities and Agreements***. Except as provided in this Plan or in the Confirmation Order, on the Effective Date, all notes, stock (where permitted by applicable law), instruments, certificates, agreements, side letters, fee letters, and other documents evidencing or giving rise to Claims against and Interests in the Debtors, shall be cancelled and the obligations of the Debtors thereunder or in any way related thereto shall be fully released, terminated, extinguished, and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule, or any requirement of further action, vote, or other approval or authorization by any Person. The Holders of or parties to such notes, stock, instruments, certificates, agreements, side letters, fee letters, and other documents shall retain their rights vis-à-vis each other but shall have no rights against the Debtors, Reorganized Debtor or the Plan Sponsor, as applicable, arising from or relating to such notes,

- 29 -

stock, instruments, certificates, agreements, side letters, fee letters, and other documents or the cancellation thereof, except the rights provided pursuant to this Plan and the Confirmation Order.

**5.11** *Authorization of Issuance of New Securities Pursuant to the Restructuring Transaction*.

(a) On the Effective Date, the Reorganized Debtor is authorized to issue or cause to be issued the New Securities to the Plan Sponsor in accordance with the terms and conditions set forth in this Plan or the Plan Supplement, without the need for any further action. The issuance of the New Securities shall be authorized under section 1123(a)(5)(J) of the Bankruptcy Code and shall be exempt from registration under the Securities Act of 1933 and any applicable state or local law requiring registration of securities pursuant to section 1145 of the Bankruptcy Code, to the extent applicable, or, to the extent section 1145 of the Bankruptcy Code is not applicable, shall be issued pursuant to section 4(a)(2) of the Securities Act of 1933 and Regulation D promulgated thereunder or another available exemption from registration.

(b) The New Securities shall be issued in accordance with the terms of the Reorganized Debtor Operating Agreement. The New Securities shall have the rights, preferences, privileges, and restrictions set forth under applicable non-bankruptcy law or in the Reorganized Debtor Operating Agreement. The sole member of the Reorganized Debtor shall be the Plan Sponsor, which shall have the rights, duties, and obligations set forth in applicable non-bankruptcy law, its governing documents, or the Reorganized Debtor Operating Agreement.

(c) Pursuant to section 1145(a)(1) of the Bankruptcy Code, the offering, issuance, and distribution of the New Securities under this Plan shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act of 1933 and any other applicable non-bankruptcy law requiring registration prior to the offering, issuance, distribution, or sale of securities, to the extent such exemption is available. To the extent section 1145 of the Bankruptcy Code is not available or applicable to any New Securities issued hereunder, such New Securities shall be issued in reliance upon section 4(a)(2) of the Securities Act of 1933, Regulation D promulgated thereunder, or another available exemption from registration, and shall be subject to applicable resale restrictions under Rule 144 of the Securities Act of 1933 or as otherwise provided by law. Recipients of New Securities issued in reliance upon an exemption other than section 1145 of the Bankruptcy Code shall be deemed to have made all representations and warranties required under applicable securities laws to qualify for such exemption.

(d) No fractional New Securities shall be issued or distributed under or pursuant to this Plan.

**5.12** *Execution, Delivery, and Enforcement of Plan Documents Upon the Restructuring Transaction*. On or before the Effective Date, the Debtors, the Reorganized Debtor, and the Plan Sponsor, as applicable, are authorized and directed to execute, deliver, file, and record such contracts, instruments, releases, agreements, and other documents, and to take such other actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and the issuance of the New Securities, including, but not limited the

following documents, which for the avoidance of doubt the secretary or any assistant secretary of the Debtors or the Reorganized Debtor shall be authorized to certify or attest to:

(a)     any operating agreements, registration rights agreements, or other governance documents, if any;

(b)     any certificates, instruments, or agreements evidencing the New Securities; and

(c)     any documents reasonably necessary to consummate the transactions contemplated by this Plan.

**5.13     *Intercompany Interests and Intercompany Claims*.** On the Effective Date, all Intercompany Claims and Interests will be adjusted, reinstated, or cancelled as determined by the Reorganized Debtor and the Plan Sponsor. No value will be attributed or paid as part of the Plan to Intercompany Claims. For the avoidance of doubt, the Reorganized Debtor will not assume any intercompany claims or liabilities.

**5.14     *Deemed Consolidation*.** This Plan is a joint plan of reorganization of all Debtors. For purposes of voting, confirmation, allowance, treatment, and distributions under this Plan only, the Debtors' Estates are deemed consolidated. On the Effective Date, all guarantees of any Debtor of the obligations of any other Debtor, all joint and several liability of any Debtor with respect to any other Debtor, and all multiple Claims against the Debtors on account of the same underlying obligation shall be deemed one Claim against and obligation of the consolidated Debtors solely for purposes of receiving treatment and distributions under this Plan. Such deemed consolidation shall not (a) constitute substantive consolidation for purposes of U.S. Trustee Fees, post-Effective Date reporting, post-Effective Date operations, or the closing of any individual Chapter 11 Case, (b) affect the legal and corporate structures of the Reorganized Debtor, (c) cause any Entity to be liable for any Claim or Cause of Action for which it otherwise is not liable, (d) affect any Intercompany Claims or Interests except as otherwise provided in this Plan, or (e) require any of the Chapter 11 Cases to remain open after such case is fully administered.

**5.15     *Corporate Action*.** Each of the matters provided for under this Plan involving the corporate structure of the Debtors or any corporate action to be taken by or required of the Debtors, including the issuance of the New Securities as applicable, shall be deemed to have occurred and be effective as provided herein, and shall be authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by partners, members, creditors, directors, or managers of the Debtors. On or (as applicable) before the Effective Date, the appropriate officers of the Debtors, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by this Plan (or necessary or desirable to effectuate any transaction hereunder) in the name of and on behalf of the Debtors. The authorizations and approvals contemplated by this Section 5.15 shall be effective notwithstanding any requirements under nonbankruptcy law.

**5.16     *Effectuating Documents; Further Transactions*.** The directors, officers, managers or any other appropriate officer of the Debtors, or, after the Effective Date, the Plan Sponsor, or

the Reorganized Debtor, as applicable, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

**5.17** **_Release of Liens_**. Except as otherwise specifically provided in this Plan or any contract, instrument, release, or other agreement or document created pursuant to this Plan, including the Cash Collateral Orders, Reinstated Equipment Loan Documents and Restructured Equipment Note Terms, on the Effective Date and concurrently with the applicable distributions to be made pursuant to this Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Reorganized Debtor and its successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors, Plan Sponsor, or any Holder of a Secured Claim.

**5.18** **_Tax Obligations of Liquidating Debtor_**. The Reorganized Debtor assumes all of the Liquidating Debtors' liabilities under any federal, state, and local tax, whether arising prior to, on, or after the Petition Date.

**5.19** **_Exemption from Certain Transfer Taxes and Recording Fees_**. To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any post-Confirmation sale by the Debtors or any transfer from any Entity pursuant to, in contemplation of, or in connection with this Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (b) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with this Plan arising out of, contemplated by, or in any way related to this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**5.20** **_Further Authorization_**. The Debtors, or, after the Effective Date, Plan Sponsor or the Reorganized Debtor or Plan Administrator, as applicable, shall be entitled to seek such orders, judgments, injunctions, and rulings as they deem necessary to carry out the intentions and purposes, and to give full effect to the provisions of this Plan.

**5.21** **_Waiver and Release of Supporting Creditor Unsecured Claims_**. Notwithstanding anything to the contrary in Section 3.3(e) of this Plan, and in consideration of the settlement embodied in the Restructuring Term Sheet, on the Effective Date each the Waiving Supporting Creditors shall be deemed to have irrevocably waived, released, and forever discharged any and all right to receive any distribution from the GUC Distribution Pool or any other distribution under this Plan on account of its General Unsecured Claims in Class 5; provided, that each Waiving Supporting Creditor shall retain the right to vote its Class 5 Claim to accept or reject this Plan, and

its Ballot shall be solicited and counted for all purposes under section 1126 of the Bankruptcy Code. The amounts that the Waiving Supporting Creditors would otherwise have been entitled to receive from the GUC Distribution Pool shall instead be available for Pro Rata distribution to the remaining Holders of Allowed General Unsecured Claims in Class 5. The waiver and release set forth in this Section are in addition to, and not in limitation of, the releases provided by the Supporting Creditors as Releasing Parties under Section 10.5 of this Plan and are consistent with the Restructuring Term Sheet and the DIP Order.

**5.22** *Replacement of Equipment Guaranties*. Subject to agreement with the relevant equipment finance counterparties, on or as of the Effective Date, with respect to the Debtors' equipment leases and financing arrangements with Huntington, Ascentium, Dext, and JB&B that are assumed or reinstated under this Plan, the Plan Sponsor shall use commercially reasonable good faith efforts to cause the applicable equipment finance counterparties to replace the existing guaranties of Dr. Mirza N. Baig associated with such equipment leases with a guaranty given by the Plan Sponsor, as the post-emergence corporate parent of the Reorganized Debtor, on terms reasonably acceptable to the Plan Sponsor and the applicable counterparty.

## ARTICLE VI

## DISTRIBUTIONS

**6.1** *Distributions Generally*. With the exception of the payments made by the Reorganized Debtor on account of the Secured Lender Claims pursuant to section 3.3(b)(ii) of this Plan, the Plan Administrator shall make all Plan distributions on behalf of the Debtors in accordance with this Article VI and other governing terms of this Plan. The designation or use of the Claims Administration Case shall not alter, limit, or transfer the Plan Administrator's obligation to fund and make distributions required under this Plan.

**6.2** *No Postpetition or Default Interest on Claims*. Unless required by the Bankruptcy Code or otherwise specifically provided for in this Plan, the Confirmation Order, or another order of the Bankruptcy Court, and notwithstanding any documents that govern the Debtors' prepetition funded indebtedness to the contrary, postpetition and/or default interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to (a) interest accruing on such Claim on or after the Petition Date on any such Claim or (b) interest at the contract default rate, as applicable.

**6.3** *Timing of Distributions*. Unless otherwise provided in this Plan, any distributions and deliveries to be made under this Plan shall be made on the Effective Date or as soon thereafter as is practicable; provided that the Plan Sponsor or Plan Administrator as applicable may implement periodic distribution dates to the extent they determine them to be appropriate.

(a)  The first distribution to Holders of Allowed General Unsecured Claims shall occur on the Disbursement Commencement Date. For the avoidance of doubt, if the Claims Reconciliation Date has not occurred by the date that is eighteen (18) months after the Effective Date, the first distribution shall be deferred until the Claims Reconciliation Date.

(b)     Each distribution shall be made to holders of Allowed General Unsecured Claims as of the applicable Distribution Date based on their respective Pro Rata Shares.

6.4     *Distribution Record Date*. As of the close of business on the Distribution Record Date, the various lists of Holders of Claims in each Class, as maintained by the Debtors, shall be deemed closed, and there shall be no further changes in the record Holders of any Claims after the Distribution Record Date. Neither the Debtors nor the Reorganized Debtor shall have any obligation to recognize any transfer of a Claim occurring after the close of business on the Distribution Record Date.

6.5     *Plan Administrator Distributions*. Except as otherwise provided herein, all distributions under this Plan shall be made by the Plan Administrator on or after the Effective Date. The Plan Administrator shall not be required to give any bond or surety or other security for the performance of its duties. The Debtors, Reorganized Debtor and Plan Sponsor, as applicable, shall use all commercially reasonable efforts to provide the Plan Administrator with the amounts of Claims and the identities and addresses of Holders of Claims, in each case, as set forth in the Debtors' books and records.

6.6     *Delivery of Distributions*. All distributions under the Plan to Holders of Allowed General Unsecured Claims shall be made by the Plan Administrator by wire transfer or by check mailed to the address set forth in the holder's Proof of Claim or, if no Proof of Claim has been filed, to the address set forth in the Debtors' Schedules, unless the Holder has provided written notice to the Debtors or Plan Administrator of a different address or has elected to receive distributions by wire transfer or other electronic means in accordance with procedures established by the Plan Administrator.

6.7     *Undeliverable Distributions and Unclaimed Property*. Any distribution that is returned as undeliverable or that remains unclaimed for a period of ninety (90) days after the applicable Distribution Date shall be deemed unclaimed. The Holder of a Claim with respect to which a distribution is deemed unclaimed shall be deemed to have forfeited its right to such distribution, and such amounts shall be redistributed to the remaining holders of Allowed General Unsecured Claims on the next Distribution Date on a Pro Rata basis. If such unclaimed distribution arises on or after the final Distribution Date, such amounts shall revert to the Reorganized Debtor free and clear of any restrictions thereon.

6.8     *Minimum Distributions*.  If any final distribution under the Plan to the Holder of an Allowed Claim would be less than US $50.00, the Plan Administrator may cancel such distribution which shall irrevocably revert to the Reorganized Debtor automatically and without need for a further order by the Bankruptcy Court notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property laws to the contrary, and the Claim of any Holder to such property or interest in property shall be discharged and forever barred.

6.9     *No Distribution in Excess of Amount of Allowed Claim*. Notwithstanding anything to the contrary in this Plan, no Holder of an Allowed Claim shall receive, on account of such Allowed Claim, Plan distributions in excess of the Allowed amount of such Claim.

**6.10** *Allocation of Distributions Between Principal and Interest*. Except as otherwise provided herein to the extent that any Allowed Claim entitled to a distribution under this Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated first to the principal amount (as determined for federal income tax purposes) of the Claim and then to accrued but unpaid interest.

**6.11** *Setoffs and Recoupments*. The Plan Administrator on behalf of the Debtors and Reorganized Debtor may, but shall not be required to, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Claim, any and all claims, rights, and Causes of Action that the Debtor or the Reorganized Debtor may hold against the Holder of such Allowed Claim. Neither the failure to effect a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release of any claims, rights, or Causes of Action that the Debtor or the Reorganized Debtor may possess against the holder of such Claim.

**6.12** *Withholding and Reporting Requirements*.

(a)     In connection with this Plan and all instruments issued in connection therewith and distributed thereon, the Plan Administrator shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under this Plan shall be subject to any such withholding and reporting requirements. In the case of a non-Cash distribution that is subject to withholding, the distributing party may withhold an appropriate portion of such distributed property and sell such withheld property to generate the Cash necessary to pay over the withholding tax. Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of this Plan.

(b)     Notwithstanding the above, each Holder of an Allowed Claim that is to receive a distribution under this Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution. The Plan Administrator has the right, but not the obligation, to not make a distribution until such Holder has made arrangements satisfactory to any issuing or disbursing party for payment of any such tax obligations.

(c)     As a condition of making any distribution under the Plan, each Person and Entity holding an Allowed Claim is required to provide any information necessary in writing, including returning W-8 or W-9 statements, as applicable, to effect the necessary information reporting and withholding of applicable taxes with respect to distributions to be made under the Plan as the Plan Administrator may request. The Plan Administrator shall withhold any distributions to a Holder of an Allowed Claim who fails to provide tax identification or social security information within the timeframe requested in writing by the Plan Administrator to such Holder of an Allowed Claim, which timeframe shall not be less than thirty (30) days. Any Distribution that would otherwise be made to any Holder of an Allowed Claim that fails to timely respond to the Plan Administrator with the information required by this Section 6.12 shall be treated as an undeliverable or unclaimed distribution pursuant to Section 6.7 hereunder.

**6.13**   *Claims Paid or Payable by Third Parties.*

(a)   *Claims Paid by Third Parties.* The Debtors, or the Plan Administrator, as applicable, shall reduce a Claim, and such Claim shall be Disallowed without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not the Debtors, Plan Administrator or Reorganized Debtor. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtors, the Plan Administrator or the Reorganized Debtor, on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the Plan Administrator or Reorganized Debtor as applicable to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of such Claim as of the date of any such distribution under this Plan.

(b)   *Claims Payable by Third Parties*. Except as otherwise provided in this Plan, (i) no distributions under this Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy, and (ii) to the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

(c)   *Applicability of Insurance Proceeds*. Except as otherwise provided in this Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any rights or defenses, including coverage defenses, held by such insurers.

## ARTICLE VII

## PROCEDURES FOR DISPUTED CLAIMS

**7.1**   *Allowance of Claims*. On and after the Effective Date, only the Plan Administrator on behalf of the Reorganized Debtor may object to the allowance of any Claim, including, but not limited to, any Administrative Claim. On and after the Effective Date, the Reorganized Debtor shall have and retain any and all rights and defenses the Debtors had with respect to any Claim, including, but not limited to, any Administrative Claim, immediately before the Effective Date. Except as expressly provided in this Plan or in any order entered in these Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under this Plan or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in these Chapter 11 Cases allowing such Claim.

**7.2**     *Objections to Claims*.

(a)     *Authority*. On and after the Effective Date, the Plan Administrator on behalf of the Reorganized Debtor shall have sole authority to settle, compromise, litigate to judgment, or file objections to any Claim, including, but not limited to any Administrative Claim, and to withdraw any objections to any Claim, including, but not limited to any Administrative Claim that are pending as of the Effective Date and/or that the Plan Administrator may file. Except as set forth above, on and after the Effective Date, the Plan Administrator also shall have the right to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

(b)     *Objection Deadline*. As soon as practicable, but no later than the Claims Objection Deadline, the Plan Administrator may file objections with the Bankruptcy Court and serve such objections on the Holders of the Claims to which such objections are made. Nothing contained herein, however, shall limit the right of the Plan Administrator to object to Claims, if any, filed or amended after the Claims Objection Deadline. The Claims Objection Deadline may be extended by the Bankruptcy Court upon motion by the Plan Administrator.

**7.3**     *Estimation of Claims*. The Plan Administrator or Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtors or the Plan Administrator previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Plan Administrator on behalf of the Reorganized Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

**7.4**     *No Distributions Pending Allowance*. If an objection to a Claim is filed as set forth in Section 7.2 of this Plan, no payment or distribution provided under this Plan shall be made on account of any disputed portion of such Claim prior to final resolution of the disputed portion of the Claim.

**7.5**     *Resolution of Claims* . Except as otherwise provided herein, or in any contract, instrument, release, or other agreement or document entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Plan Administrator on behalf of the Reorganized Debtor (or its successors or assignees), shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims and Disputed Claims without further notice or approval of the Bankruptcy Court. A Claim that is resolved by a written settlement or compromise executed by the Plan Administrator on behalf of the Reorganized Debtor pursuant to this Section 7.5 shall be deemed Allowed (or Disallowed, as applicable) in the amount agreed

upon in such settlement or compromise, effective upon execution of the written agreement, without the need for any further order of the Bankruptcy Court.

**7.6** *Disallowed Claims*. All Claims held by Persons or Entities against whom or which the Debtors or the Plan Administrator has commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549, 550 and/or 724 of the Bankruptcy Code shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject this Plan; provided, Claims that are deemed Disallowed pursuant to this Section 7.6 shall continue to be Disallowed for all purposes until such Claim has been settled or resolved by Final Order and any sums due to the Debtors or Plan Administrator from such Person or Entity have been turned over or paid to Plan Administrator.

## ARTICLE VIII

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.1** *Assumption or Rejection of Executory Contracts and Unexpired Leases*.

(a) Except as otherwise provided in this Plan, on the Effective Date, all Executory Contracts and Unexpired Leases of the Debtors shall be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease (i) has previously been rejected, assumed, or assumed and assigned by order of the Bankruptcy Court in effect prior to the Effective Date (which order may be the Confirmation Order); (ii) is the subject of a motion to assume filed on or before the Effective Date; (iii) is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases to be assumed by the Reorganized Debtor or assumed and assigned to the Reorganized Debtor; or (iv) has expired or terminated pursuant to its own terms. Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order approving the assumptions or rejections of such Executory Contracts and Unexpired Leases as set forth in this Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, all assumptions, assumptions and assignments, and rejections of Executory Contracts and Unexpired Leases in this Plan will be effective as of the Effective Date. Each Executory Contract and Unexpired Lease assumed or assumed and assigned pursuant to this Plan, or by Bankruptcy Court order, will transfer to and be fully enforceable by the Reorganized Debtor or its assignee in accordance with its terms, except as such terms may have been modified by order of the Bankruptcy Court. Notwithstanding the foregoing paragraph or anything to the contrary herein, the Debtors reserve the right to supplement the Schedule of Assumed Executory Contracts and Unexpired Leases prior to the Effective Date.

(b) With respect to the Assumed Contracts, any provision in any such agreement that:

(i) prohibits, restricts, or conditions the assumption and/or assignment, or purports to prohibit, restrict, or condition the assumption and/or assignment (including any "change of control" provision) of such agreement or allows any party to such agreement to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assumption and/or

- 38 -

assignment of such agreement constitutes an unenforceable anti-assignment and/or discrimination provision and is void and of no force and effect.

(ii) provides for modification, breach, or termination, or deemed modification, breach, or termination on account of or related to any of the following: (A) the commencement or continuation of the Chapter 11 Cases, (B) the insolvency or financial condition of the Debtors at any time, (C) the Debtors' assumption and/or assignment of such agreement, (D) a change of control or similar occurrence, or (E) the consummation of this Plan, such provision is modified so as not to entitle the non-Debtor party thereto to prohibit, restrict, or condition assumption and/or assignment, to modify, terminate, or declare a breach or default under such agreement, or to exercise any other breach- or default-related rights or remedies with respect thereto, including any provision that purports to allow the non-Debtor party thereto to terminate or recapture such agreement, impose any penalty thereunder, condition any renewal or extension thereof, impose any rent acceleration or assignment fee, or increase or otherwise impose any other fees or other charges in connection therewith.

(c) Upon an assignment of an Executory Contract or Unexpired Lease to the Reorganized Debtor or the Reorganized Debtor's assumption of an Executory Contract or Unexpired Lease, as of the Effective Date pursuant to this Plan, no default or other unperformed obligations of the Debtors arising on or prior to the Effective Date shall exist, and each non-Debtor party is forever barred, estopped, and permanently enjoined from (i) declaring a breach or default under such agreement for any act or omission occurring on or prior to the Effective Date, (ii) raising or asserting against the Debtors, the Estates or the Reorganized Debtor, or the assets or property of any of them, any fee, default, termination, breach, Cause of Action, or condition arising under or related to the agreement based upon a fact or circumstance that occurred on or prior to the Effective Date, or (iii) taking any other action as a result of the Debtors' financial condition, bankruptcy, or failure to perform any of its obligations under the agreement. Each non-Debtor party to such an agreement is also forever barred, estopped, and permanently enjoined from (x) asserting against the Debtors, the Estates or the Plan Sponsor, or the assets or property of any of them, any breach, default, or Cause of Action arising out of any indemnity or other obligation or warranties for acts, omissions, or occurrences arising or existing on or prior to the Effective Date, or, against the Plan Sponsor, any counterclaim, setoff, or any other Cause of Action that was or could have been asserted or assertable against the Debtors or the Estates and (y) imposing or charging against the Plan Sponsor or its Affiliates any rent accelerations, assignment fees, increases, or any other fees or charges as a result of assumption of the agreement.

(d) Any Person or Entity that may have had the right to consent to the assumption and/or assignment of an Executory Contract or Unexpired Lease has consented to such assumption and/or assignment for purposes of section 365 of the Bankruptcy Code if such Person or Entity failed to object timely to the assumption of such agreement, and the Plan Sponsor has demonstrated adequate assurance of future performance with respect to such agreement pursuant to section 365 of the Bankruptcy Code.

**8.2** *Assumption of the Hospital Lease*. The Hospital Lease shall be assumed and shall be cured through payment of the Hospital Lease Cure Payment by the Debtors and Reorganized

Debtor in accordance with the terms of the Hospital Lease Cure Schedule; for the sake of clarity, Landlord's acceptance of the Hospital Lease Cure Payment shall not constitute a waiver, discharge, or release of any claims against any third-party co-obligors on the Hospital Lease, including but not limited to any guarantor(s), for any remaining deficiency due under the Hospital Lease after applying the Hospital Lease Cure Payment.

**8.3**   ***Assumption or Rejection of Government Agreements***. The HHSC UC DY10 and UC DY12 Agreement shall be an Assumed Contract under this Plan. As to the other Government Agreements, the Debtors intend to negotiate modified terms with the counterparties to such Government Agreements. Any modified terms agreed to between the Debtors and counterparties to the Government Agreements shall be disclosed in the Plan Supplement. The Debtors' assumption of any Government Agreement listed in the Schedule of Assumed Executory Contracts or Unexpired Leases shall relate to such agreements as modified pursuant to the terms disclosed in the Plan Supplement.

**8.4**   ***Cure of Defaults Under Assumed Contracts***.

(a)   Any monetary defaults under each Assumed Contract shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount (or, in the case of the Landlord, the Hospital Cure Payment) on the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Assumed Contracts may otherwise agree. In the event of a dispute regarding (a) the amount of any payments to cure such a default, (b) the ability of the Plan Sponsor, Reorganized Debtor, or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (c) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. Any objection by an Executory Contract or Unexpired Lease counterparty to a proposed assumption or related Cure Amount must be filed and served in accordance with the Solicitation Order. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure Amount shall be deemed to have assented to such assumption or Cure Amount.

(b)   Assumption of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall result in the full release and satisfaction or any Claims against the Debtors or pre-assumption defaults by the Debtors, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition of other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption; *provided, however*, that Landlord's acceptance of the Hospital Lease Cure Payment shall not constitute a waiver, discharge, or release of any claims against any third-party co-obligors on the Hospital Lease, including but not limited to any guarantor(s), for any remaining deficiency due under the Hospital Lease after applying the Hospital Lease Cure Payment. Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned shall be deemed Disallowed and expunged without further notice to or action, order or approval of the Bankruptcy Court.

**8.5**     ***Claims Based on Rejection of Executory Contracts and Unexpired Leases***. Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of the Debtors' Executory Contracts and Unexpired Leases pursuant to this Plan or otherwise must be filed no later than 5:00 p.m. (prevailing Central Time) on the date that is thirty (30) days after the Effective Date. Any Proofs of Claim arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases that are not timely filed shall be Disallowed automatically, forever barred from assertion, and shall not be enforceable against the Debtors without the need for any objection by the Debtors or further notice to or action, order, or approval of the Bankruptcy Court. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts and Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with the particular provisions of this Plan for such Claims.

**8.6**     ***Contracts and Leases Entered into After the Petition Date***. Contracts and leases entered into after the Petition Date by the Debtors, including any Executory Contracts and Unexpired Leases assumed by the Debtors and Reorganized Debtor, shall be performed by the Debtors liable thereunder in the ordinary course of its business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) shall survive and remain unaffected by entry of the Confirmation Order.

**8.7**     ***Reservation of Rights***. Nothing contained in this Plan shall constitute an admission by the Debtors that any particular contract is in fact an Executory Contract or Unexpired Lease or that the Debtors have any liability thereunder.

## ARTICLE IX

## CONDITIONS PRECEDENT TO CONSUMMATION OF THIS PLAN

**9.1**     ***Conditions Precedent to the Effective Date***. The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with the terms of this Plan:

(a)     The Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably acceptable to the Plan Sponsor and the Confirmation Order has become final and not subject to stay or pending appeal;

(b)     The Plan of Reorganization of White Rock Medical Center, LLC and its Affiliated Debtors filed on May 17, 2026, [Docket No. 277] shall have been withdrawn in accordance with the Restructuring Term Sheet;

(c)     The Definitive Documents and any necessary opinions shall have been negotiated, executed, and delivered in forms reasonably acceptable to the Plan Sponsor and the Debtors have complied with the terms of the Definitive Documents in all material respects;

(d)     The Plan Funding shall have been transferred to the Debtors in accordance with the instructions provided to the Plan Sponsor;

(e)     All required financing obligations and related transactions of the Debtors and Plan Sponsor contemplated by the Plan have been consummated;

(f)     All necessary governance, organizational and transaction procedures necessary to effect the Plan have been consummated;

(g)     The Confirmation Order shall authorize the Debtors or Reorganized Debtor to seek separate final decrees closing the Chapter 11 Case of White Rock Medical Center, LLC and any other Debtor whose Chapter 11 Case need not remain open, shall provide that the Claims Administration Case may remain open solely for the limited purposes set forth in this Plan, and shall provide that completion of all distributions under this Plan is not required for entry of a final decree closing any Chapter 11 Case that is otherwise fully administered;

(h)     All governmental and regulatory approvals, consents, authorizations, and filings necessary for the issuance of the New Securities shall have been obtained or made, as applicable, including any required filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, and any applicable waiting periods shall have expired or been terminated; and

(i)     all actions, documents, certificates, and agreements necessary to implement the Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable government units in accordance with applicable law, and all other actions required to be taken in connection with the Effective Date shall have occurred; *provided*, *that*, notwithstanding when a condition precedent to the Effective Date occurs, for purposes of the Plan, such condition precedent shall be deemed to have occurred simultaneously with the other conditions precedent to the Effective Date; *provided*, *further*, that to the extent a condition precedent (a "Prerequisite Condition") may be required to occur prior to another condition precedent (a "Subsequent Condition") then, for purposes of the Plan, the Prerequisite Condition shall be deemed to have occurred immediately prior to the Subsequent Condition regardless of when such Prerequisite Condition or Subsequent Condition shall have occurred.

**9.2     *Waiver of Conditions Precedent*.** Each of the conditions precedent in Section 9.1 of the Plan may be waived, in whole or in part, by the Plan Sponsor, without notice, leave or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate this Plan.

**9.3     *Notice of Effective Date*.** Following the satisfaction or waiver of all conditions precedent to the Effective Date, the Debtors shall file a notice of (a) the occurrence of the Effective Date, (b) the Administrative Claims Bar Date, (c) the Professional Fee Claims Bar Date, and (d) such other matters as appropriate or as may be ordered by the Bankruptcy Court.

## **ARTICLE X**

### **EFFECT OF PLAN CONFIRMATION**

**10.1     *Binding Effect*.** Following the Effective Date, this Plan, and any documents and agreements executed and delivered in connection with the transaction provided for herein, including any organizational documents of the Reorganized Debtor, shall be binding upon and inure to the benefit of the Debtors, the Estates, the Reorganized Debtor, all present and former

Holders of Claims and Interests, whether or not such Holders voted in favor of this Plan, and their respective successors and assigns.

**10.2** *Discharge*. Pursuant to, and to the maximum extent provided by, section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in this Plan (including with respect to Claims reinstated by this Plan), the distributions, rights, and treatment that are provided in this Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of all Claims against, and Interests in, the Debtors, and Causes of Action of any nature whatsoever arising on or before the Effective Date, known or unknown, including, without limitation, any interest accrued or expenses incurred on such Claims from and after the Petition Date, against the Debtors, and liabilities of, Liens on, obligations of, and rights against, the Debtors or any of their assets or properties arising before the Effective Date, regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims or Equity Interests, in each case whether or not: (a) a proof of Claim or Equity Interest based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Equity Interest based upon such debt or right is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Equity Interest has accepted this Plan. Any default by the Debtors with respect to any Claim that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date. Except as otherwise specifically provided in this Plan (including with respect to Claims reinstated by this Plan), all Entities shall be precluded from asserting against the Debtors, the Reorganized Debtors, or their respective properties or interests in property, any other Claims based on any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date. Except with respect to Claims reinstated pursuant to this Plan, the Confirmation Order shall be a judicial determination of the discharge of all Claims arising before the Effective Date against the Debtors and all Interests in the Debtors, subject to the occurrence of the Effective Date.

**10.3** *Injunction*. Except as otherwise specifically provided in this Plan or the Confirmation Order, and subject to section 524(a) of the Bankruptcy Code, all Persons or Entities who have held, hold or may hold (a) Claims or Interests that arose prior to the Effective Date, (b) Causes of Action that are subject to exculpation pursuant to Section 10.4 of this Plan (but only to the extent of the exculpation provided in Section 10.4 of this Plan), or (c) Claims, Interests or Causes of Action that are otherwise discharged, satisfied, stayed or terminated pursuant to the terms of this Plan and all other parties-in-interest seeking to enforce such Claims, Interests or Causes of Action are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim (including a Subordinated Claim) against or Interest in the Debtors or the Plan Sponsor, or property of any Debtor transferred to the Plan Sponsor, other than to enforce any right to a distribution pursuant to this Plan, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors or the Plan Sponsor or property of the Debtors transferred to the Plan Sponsor with respect to any such Claim or Interest, other than to enforce any right to a distribution pursuant to this Plan, (iii) creating, perfecting or enforcing any Lien or encumbrance of any kind against the Debtors or Plan Sponsor, or against the property or interests in property of the Debtors transferred to the Plan Sponsor with respect to any such Claim or Interest, other than to enforce any right to a distribution pursuant to this Plan, or (iv) asserting any right of setoff, recoupment (except for setoffs or recoupment validly exercised prepetition), or subrogation of any kind against any obligation due from the Debtors or

Plan Sponsor, or against the property or interests in property of the Debtors transferred to the Plan Sponsor, with respect to any such Claim or Interest unless such Persons or Entities have filed a motion requesting   the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Persons or Entities assert, have, or intend to preserve any right of setoff pursuant to applicable law or otherwise. Such injunction shall extend to any successors or assignees of the Debtors or Plan Sponsor and its respective properties and interests in properties.

10.4     *Exculpation*. Effective as of the Effective Date, to the extent permitted under section 1125(e) of the Bankruptcy Code, the Exculpated Parties shall not have or incur liability for, and are exculpated from any Cause of Action related to any act or omission taking place between the Petition Date and the Effective Date, in connection with, relating to, or arising out of, these Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of this Plan and Disclosure Statement, the Plan Supplement, any previous plan of reorganization and applicable disclosure statement or any transaction under the Plan, contract, instrument, or document or transaction approved by the Bankruptcy Court in these Chapter 11 Cases, except for (a) any Cause of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted fraud, willful misconduct, or gross negligence of such Person, and (b) any Cause of Action related to any liability of professionals to their clients pursuant to Texas Disciplinary Rules of Professional Conduct Rule 1.08(g); *provided, however*, that, for the avoidance of doubt, any such exculpation shall not act or be construed to exculpate, channel, release, enjoin, or otherwise affect any civil or criminal enforcement action by a Governmental Unit.

10.5     *Releases*.

(a)     Debtors' Releases. **NOTWITHSTANDING ANYTHING CONTAINED IN THIS PLAN TO THE CONTRARY, PURSUANT TO BANKRUPTCY CODE SECTION 1123(B) AND TO THE FULLEST EXTENT ALLOWED BY APPLICABLE LAW, FOR GOOD AND VALUABLE CONSIDERATION, ON AND AFTER THE EFFECTIVE DATE, EACH RELEASED PARTY IS DEEMED RELEASED AND DISCHARGED BY THE DEBTORS AND THEIR ESTATES FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS OR THEIR ESTATES, THAT THE DEBTORS AND THEIR ESTATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, A DEBTOR OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS (INCLUDING THE MANAGEMENT, OWNERSHIP, OR OPERATION THEREOF), ANY SECURITIES ISSUED BY THE DEBTORS AND THE OWNERSHIP THEREOF, THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, ANY AVOIDANCE ACTIONS, ANY INTERCOMPANY TRANSACTION, THE CHAPTER 11 CASES, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING, AS APPLICABLE, OF THE DISCLOSURE STATEMENT, THE DIP FACILITY, THE PLAN, THE PLAN SUPPLEMENT OR ANY RESTRUCTURING TRANSACTION CONTRACT,**

- 44 -

INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE DISCLOSURE STATEMENT, THE DIP FACILITY, THE PLAN, THE PLAN SUPPLEMENT, THE CHAPTER 11 CASES, THE FILING OF THE CHAPTER 11 CASES INCLUDING ANY PREVIOUS PLANS OF REORGANIZATION AND RELATED DOCUMENTS, THE DIP DOCUMENTS, SOLICITATION OF VOTES ON THE PLAN, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE PURSUIT OF CONSUMMATION OF THE PLAN, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE ISSUANCE OR DISTRIBUTION OF ANY SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER RELATED ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

(b)      Releases by Releasing Parties.  **NOTWITHSTANDING ANYTHING CONTAINED IN THIS PLAN TO THE CONTRARY, AS OF THE EFFECTIVE DATE, AND TO THE FULLEST EXTENT ALLOWED BY APPLICABLE LAW, EACH RELEASING PARTY IS DEEMED TO HAVE RELEASED AND DISCHARGED EACH RELEASED PARTY FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF ITSELF OR ANY DEBTOR OR ITS ESTATE, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS (INCLUDING THE MANAGEMENT, OWNERSHIP OR OPERATION THEREOF), ANY SECURITIES ISSUED BY THE DEBTORS AND THE OWNERSHIP THEREOF, THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, ANY AVOIDANCE ACTIONS, ANY INTERCOMPANY TRANSACTION, THE CHAPTER 11 CASES, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE DISCLOSURE STATEMENT, THE DIP FACILITY, THE PLAN, THE PLAN SUPPLEMENT, PREVIOUS PLAN OF REORGANIZATION AND RELATED DOCUMENTS, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE DISCLOSURE STATEMENT, THE DIP FACILITY, THE PLAN, THE PLAN SUPPLEMENT, THE CHAPTER 11 CASES, THE FILING OF THE CHAPTER 11 CASES, THE DIP DOCUMENTS, SOLICITATION OF VOTES ON THE PLAN, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE PURSUIT OF CONSUMMATION OF THE PLAN, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE ISSUANCE OF ANY SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER RELATED ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE (A) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, ANY RESTRUCTURING TRANSACTION, OR ANY**

**DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN AND SHALL NOT RESULT IN A RELEASE, WAIVER, OR DISCHARGE OF ANY OF THE DEBTORS OR THE PLAN SPONSOR WITH RESPECT TO SUCH POST-EFFECTIVE DATE OBLIGATIONS, (B) OBLIGATIONS UNDER ANY OF THE DIP ORDERS THAT, BY THEIR EXPRESS TERMS, SURVIVE THE TERMINATION OF THE DIP ORDERS, INCLUDING THE RIGHTS OF THE APPLICABLE AGENTS TO EXPENSE REIMBURSEMENT, INDEMNIFICATION AND SIMILAR AMOUNTS OR (C) CLAIMS OR CAUSE OF ACTIONS RELATED TO ANY ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER BY A COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE.**

(c)      ***Consensual Releases; Reservation and Severability***. The releases by Releasing Parties set forth in Section 10.6(b) are consensual and are binding only upon those Releasing Parties that have consented to provide such releases, including Holders of Claims that vote to accept this Plan and any other Holders that are afforded, and do not timely exercise, an opportunity to opt out of such releases on their Ballots or in connection with the solicitation of this Plan. No Holder that abstains from voting on this Plan, or that votes to reject this Plan and timely opts out, shall be bound by the third-party releases set forth in Section 10.6(b). If any release, exculpation, or injunction provision of this Plan is determined by a court of competent jurisdiction to be invalid, unenforceable, or impermissible as to any Person or Entity, such determination shall not affect the validity or enforceability of any other provision of this Plan or of such releases as to any other Person or Entity, and shall not constitute grounds to deny confirmation of, or to delay or impair consummation of, this Plan.

## ARTICLE XI

## RETENTION OF JURISDICTION

**11.1**      ***Retention of Jurisdiction***. Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction (unless otherwise indicated) over all matters arising in, arising out of, and/or related to, the Chapter 11 Cases and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)      resolve any matters related to (i) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which any Debtor is a party or with respect to which any Debtor may be liable and to hear, determine, and, if necessary, liquidate any Claims arising therefrom, including Cure Amounts pursuant to section 365 of the Bankruptcy Code, (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed or assumed and assigned, and (iii) any dispute regarding whether a contract or lease is or was executory or unexpired;

(b)      decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date (which jurisdiction shall be nonexclusive as to any such non-core matters);

(c) Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or Allowance of Claims or Interests;

(d) enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan, and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan, the Disclosure Statement, the Plan Supplement, or the Confirmation Order;

(e) resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan or any contract, instrument, release, or other agreement or document that is executed or created pursuant to this Plan, or any entity's rights arising from or obligations incurred in connection with this Plan or such documents;

(f) modify this Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan;

(g) hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under sections 330, 331, 503(b), and 1129(a)(4) of the Bankruptcy Code; *provided*, *however*, that from and after the Effective Date the payment of fees and expenses by the Plan Administrator, including professional fees, shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(h) issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with consummation, implementation, or enforcement of this Plan or the Confirmation Order;

(i) adjudicate controversies arising out of the administration of the Estates or the implementation of this Plan;

(j) resolve any cases, controversies, suits, or disputes that may arise in connection with Claims, including the Bar Date, related notice, claim objections, Allowance, Disallowance, estimation, and distribution;

(k) adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(l) adjudicate, decide, or resolve any and all matters related to Causes of Action, that are pending as of the Effective Date or that may be commenced in the future, by, against, or on behalf of the Debtors, non-Debtor Affiliate, or Plan Sponsor;

(m)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated, or distributions pursuant to this Plan are enjoined or stayed;

(n)     determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, the Plan Supplement, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Plan Supplement, the Disclosure Statement, or the Confirmation Order;

(o)     enforce all orders, judgments, compromises, settlements, discharges, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases;

(p)     adjudicate controversies with respect to distributions to Holders of Allowed Claims;

(q)     determine requests for the payment of Claims and Interests entitled to priority under section 507 of the Bankruptcy Code;

(r)     hear and determine all matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of taxes under section 505(b) of the Bankruptcy Code);

(s)     hear and determine all matters concerning exemptions from state and federal registration requirements in accordance with section 1145 of the Bankruptcy Code;

(t)     hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code;

(u)     hear and determine any issues related to any matter adjudicated in the Chapter 11 Cases;

(v)     enter one or more orders concluding or closing any Chapter 11 Case, including separate final decrees closing the Chapter 11 Case of White Rock Medical Center, LLC and any other Chapter 11 Case that is fully administered; and

(w)     hear and determine any other matter not inconsistent with the Bankruptcy Code.

**11.2   *Jurisdiction for Certain Other Agreements***. This Plan shall not modify the jurisdictional provisions of the documents contained in the Plan Supplement. Notwithstanding anything herein to the contrary, on and after the Effective Date, the Bankruptcy Court's retention of jurisdiction pursuant to this Plan shall not govern the enforcement or adjudication of any rights or remedies with respect to or as provided in the documents in the Plan Supplement and the jurisdictional provisions of such documents shall control.

**11.3   *Courts of Competent Jurisdiction***. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matters

arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

**12.1**   *Payment of Statutory Fees*. All U.S. Trustee Fees payable after the Effective Date, if any, shall be paid by the Plan Administrator on behalf of the Debtors with respect to each Debtor until the closing of the Chapter 11 Case that remains open until such Chapter 11 Case is converted, dismisses, or closed by entry of a final decree pursuant to section 350(a) of the Bankruptcy Code. The Plan Administrator shall file and serve on the U.S. Trustee quarterly reports of the disbursements made in each Chapter 11 Case that remains open within fifteen (15) days after the conclusion of each such period, until such Chapter 11 Case is converted, dismissed, or closed by entry of a final decree. Any such reports shall be prepared consistent with (both in terms and format) of the applicable Bankruptcy Court and U.S. Trustee Guidelines for such matters. After entry of a final decree closing the Chapter 11 Case of White Rock Medical Center, LLC, the ordinary course operating receipts and disbursements of the Reorganized Debtor shall not be included in the calculation of U.S. Trustee Fees for the Claims Administration Case or any other Chapter 11 Case that remains open, except to the extent otherwise required by Final Order.

**12.2**   *Amendment or Modification of this Plan*. Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, the Debtors reserve the right to alter, amend, or modify this Plan at any time prior to or after the Confirmation Date but prior to the substantial consummation of this Plan. A Holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim of such Holder.

**12.3**   *Substantial Consummation and Case Closing*. On the Effective Date, this Plan shall be deemed substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code to the fullest extent permitted by applicable law. The Debtors or Reorganized Debtor may rely on such substantial consummation, together with the transfer or vesting of property, the assumption of management and operation of the Reorganized Debtor's business, the commencement or availability of Plan distributions, and the absence of unresolved matters requiring the Chapter 11 Case of White Rock Medical Center, LLC to remain open, as grounds to seek entry of a final decree closing the Chapter 11 Case of White Rock Medical Center, LLC. Entry of a final decree closing the Chapter 11 Case of White Rock Medical Center, LLC shall not be delayed solely because distributions or payments required by this Plan have not been completed.

**12.4**   *Severability of Plan Provisions*. If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or

interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

      **12.5**    ***Successors and Assigns***. This Plan shall be binding upon and inure to the benefit of the Debtors, and their respective successors and assigns. The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

      **12.6**    ***Revocation, Withdrawal, or Non-Consummation***. The Debtors reserve the right to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file other plans of reorganization. If this Plan is revoked or withdrawn, or if Confirmation or consummation of this Plan does not occur, then (a) this Plan shall be null and void in all respects; (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests, assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void; and (c) nothing contained in this Plan, nor any action taken or not taken by the Debtors with respect to this Plan, the Disclosure Statement, or the Confirmation Order, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person; (ii) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (iii) constitute or be deemed to constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Person.

      **12.7**    ***Governing Law***. Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an Exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflict of law thereof.

      **12.8**    ***Immediate Binding Effect***. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of this Plan and Plan Supplement shall be immediately effective and enforceable.

      **12.9**    ***Entire Agreement***. On the Effective Date, this Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

      **12.10**   *Notice*. All notices, requests, and demands to or upon the Debtors, to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been

duly given or made when actually delivered or, in the case of notice by electronic transmission, when received and telephonically confirmed, addressed as follows:

Omar J. Alaniz (SBN 24040402)
**REED SMITH LLP**
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201
Telephone: (469) 680-4200

Scott M. Esterbrook (admitted *pro hac vice*)
Derek M. Osei-Bonsu (admitted *pro hac vice*)
**REED SMITH LLP**
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Telephone: (215) 851-8100

**12.11**   *Votes Solicited in Good Faith*. Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to Bankruptcy Code section 1125(e), the Debtors their respective Affiliates, agents, representatives, members, principals, equity holders (regardless of whether such interests are held directly or indirectly), officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan, and, therefore, neither any of such parties or individuals or the Plan Sponsor will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the securities offered and sold under the Plan.

**12.12**   *Closing of Chapter 11 Cases*. As soon as reasonably practicable after the Effective Date and substantial consummation of the Plan, the Reorganized Debtor or Plan Administrator shall seek entry of a final decree closing the Chapter 11 Case of White Rock Medical Center, LLC as promptly as practicable. The Chapter 11 Case of North Houston Surgical Hospital or such other Debtor that is not expected to operate after the Effective Date shall remain open as the Claims Administration Case and shall serve as an administrative docket under which the Plan Administrator shall reconcile, object to, estimate, allow, disallow, settle, and pay Claims against any Debtor. Because the Claims against the Debtors are deemed consolidated under this Plan, objections to and the resolution of Claims against any Debtor may be prosecuted in the Claims Administration Case notwithstanding the closing of the Chapter 11 Case of White Rock Medical Center, LLC and the other Chapter 11 Cases. The Reorganized Debtor or Plan Administrator may also seek entry of one or more final decrees closing  the Chapter 11 Case of any other Debtor whose Chapter 11 Case need not remain open for claims administration purposes, in each case without prejudice to the Bankruptcy Court's retained jurisdiction under this Plan and the Confirmation Order to the administration, objection, resolution, or payment of Claims against any Debtor through the Claims Administration Case. With respect to any Chapter 11 Case that remains open the Plan Administrator shall file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close such Chapter 11 Case. The completion of distributions under this Plan shall not, by itself, be a condition to closing the Chapter 11 Case of White Rock Medical Center, LLC.

**12.13**   *Waiver or Estoppel*. Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement

- 51 -

was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

**White Rock Medical Center LLC, et al.**

By: Erik White
*/s/ Erik White*
By:  Erik White
Its:  Chief Restructuring Officer

 APPROVED AS TO FORM:

 REED SMITH, LLP
*/s/ Omar J. Alaniz*
Omar J. Alaniz (SBN 24040402)
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201
Telephone: (469) 680-4200
Facsimile: (469) 680-4299
E-mail:  oalaniz@reedsmith.com
*Counsel for the Debtors and Debtors in Possession*