# PLAN ADMINISTRATOR AGREEMENT

This Plan Administrator Agreement (this "Agreement") is made this [1st] day of October, 2026, by and among White Rock Medical Center, LLC (and certain of its debtor affiliates, collectively the "Debtors"), and Erik White of HMP Advisory Holdings, LLC dba Harney Partners as the Plan Administrator appointed under the terms of the Plan, the Confirmation Order, and this Agreement (and any successor thereof, the "Plan Administrator").

## RECITALS

WHEREAS, on January 20, 2026, and January 21, 2026, the Debtors filed voluntary chapter 11 petitions with the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court");

WHEREAS, on [_], 2026, the Bankruptcy Court entered an order [Doc. No. _] (the "Confirmation Order") confirming the *Second Plan of Reorganization of White Rock Medical Center and its Debtor Affiliates as Modified on July 17, 2026* (as amended and confirmed, the "Plan");[1]

WHEREAS, pursuant to the terms of the Plan and the Confirmation Order, the Plan Administrator was appointed to implement the Plan, effectuate payments to creditors and wind down certain of the Debtors' affairs according to the Plan and to take other actions in accordance with and pursuant to the Plan and the Confirmation Order;

WHEREAS, pursuant to the terms of the Plan, the Plan Administrator will have full authority, duty and responsibility to administer all of the Liquidating Debtors' remaining assets and chapter 11 cases after the establishment of the Reorganized Debtor as set forth in the Plan (the "Assets") and make all distributions in accordance with the terms of the Plan for the benefit of holders of Allowed Claims (each a "Beneficiary" and collectively, the "Beneficiaries"); and

WHEREAS, the Plan became effective by its terms (the "Effective Date") on the same date as the execution of this Agreement.

NOW, THEREFORE, pursuant to the Plan and the Confirmation Order, in consideration of the mutual agreements of the parties contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

---

[1] Unless otherwise noted, capitalized terms used herein but not yet defined have the meanings given to them elsewhere in this Agreement, in the Plan, or in the Confirmation Order, as applicable.

## ARTICLE I
## THE PLAN ADMINISTRATOR

**1.1 Appointment.** The Plan Administrator was selected by the Debtors pursuant to the provisions of the Plan and will be deemed appointed on the Effective Date. The Plan Administrator's appointment shall continue until the earlier of (a) the termination of this Agreement or (b) the Plan Administrator's resignation, death, Disability,[2] dissolution, or removal. To effectuate an orderly and efficient transition of the administration of the Liquidating Debtors to the Plan Administrator, the Plan Administrator may perform certain services in connection with its duties and obligations under this Agreement prior to the Effective Date, and the authorization for such performance is ratified by the execution hereof to the extent not already authorized by the Plan or Confirmation Order.

**1.2 General Powers.** The Plan Administrator shall have all duties, obligations, rights, and benefits assumed by, assigned to, or vested in the Liquidating Debtors under the Plan, the Confirmation Order, this Agreement, and any other agreement entered pursuant to or in connection with the Plan. Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, the Plan Administrator may control and exercise authority over the Liquidating Debtors in accordance with section 5.2 of the Plan. No Person dealing with the Plan Administrator shall be obligated to inquire into the Plan Administrator's authority in connection with the acquisition, management, or disposition of the remainder of the Liquidating Debtors' assets upon consummation of the Restructuring Transaction provided in Article V of the Plan. The Plan Administrator shall, in an expeditious but orderly manner, liquidate and convert to Cash any of the Liquidating Debtors' remaining assets which are not in the form of Cash as of the Effective Date, and not unduly prolong the administration of the assets and distributions to Beneficiaries. Without limiting the generality of the foregoing, the Plan Administrator shall be expressly authorized to hold, invest, expend and distribute any of the Liquidating Debtors' remaining assets, subject to limitations set forth herein, in the Plan or in the Confirmation Order. In addition, subject to any limitations set forth in the Plan, the Confirmation Order or this Agreement, the Plan Administrator shall have the following powers and responsibilities in addition to those set forth in section 5.2 of the Plan:

(a) exercise all power and authority that may be or could have been exercised, commence any and all proceedings that may be or could have been commenced, and take all actions that may be or could have been taken with respect to the Liquidating Debtors' remaining assets, by any officer, director, shareholder, or other party acting in the name of the Liquidating Debtors, or their Estates with like effect as if duly authorized, exercised, and taken by action of such officers, directors, shareholders, or other Person;

(b) open and maintain bank accounts on behalf of or in the name of the Liquidating Debtors and designate additional authorized signers on bank accounts as may be necessary, calculate and make distributions, and take other actions consistent with the Plan and the

---

[2] For purposes hereof, the term "Disability" shall mean incapacity resulting in the inability to perform services for two consecutive months or in the aggregate of seventy-five (75) days during any twelve-month period.

implementation thereof, including the establishment, re-evaluation, adjustment, and maintenance of appropriate reserves, in the name of the Debtors;

(c) abandon any remaining assets of the Liquidating Debtors not already abandoned pursuant to the terms of the Plan (other than Cash and cash equivalents) that the Plan Administrator reasonably determines to be without material monetary value or burdensome to the Plan Administrator's administration of the Liquidating Debtors' remaining assets and/or Estates, in each case after giving effect to the costs and expenses reasonably expected to liquidate such assets to Cash;

(d) pay all lawful expenses, debts, charges, taxes, and liabilities of the Liquidating Debtors in accordance with this Agreement, the Plan and the Confirmation Order;

(e) if any of the Assets are situated in any state or other jurisdiction in which the Plan Administrator is not qualified to act, then the Plan Administrator may nominate and appoint a person duly qualified to act on its behalf in such state or jurisdiction and require from each such Person such security, if any, as may be designated by the Plan Administrator in its discretion; confer on any such Person all the rights, powers, privileges, and duties of the Plan Administrator hereunder, subject to the conditions and limitations of this Agreement, except as modified or limited by the Plan Administrator and except where the conditions and limitations may be modified by the laws of such state or other jurisdiction (in which case, the laws of the state or other jurisdiction in which such Person is acting shall prevail to the extent necessary); require such Person to account and be answerable to the Plan Administrator for all monies, assets, and other property that may be received in connection with the administration of all property; and, subject to applicable law, remove such Person, with or without cause, and appoint a successor at any time by the execution by the Plan Administrator of a written instrument declaring such Person removed from office, and specifying the effective date and time of removal;

(f) purchase and carry all insurance policies and pay all insurance premiums and costs it deems reasonably necessary or advisable;

(g) implement, enforce, or discharge all of the terms, conditions, and all other provisions of, and all duties and obligations under, the Plan, the Confirmation Order, and this Agreement relating to the Liquidating Debtors and their Assets;

(h) invest in demand and time deposits in banks or savings institutions, or temporary investments such as short term certificates of deposit or Treasury bills or other investments that a liquidating trust (within the meaning of Treasury Regulation Section 301.7701-4(d) and in accordance with Rev. Proc. 94-45, 1994-2, C.B. 684) may be permitted to hold, pursuant to the Treasury Regulations or any modification in the Internal Revenue Services ("IRS") guidelines, whether set forth in IRS rulings, revenue procedures, other IRS pronouncements or otherwise;

(i) take all actions reasonably necessary to wind down the Liquidating Debtors' Estates;

(j) file motions seeking the entry of a final decree to close the case of a Liquidating Debtor upon completion of distributions hereunder and the Plan and the activities of

the Plan Administrator contemplated under the Plan and herein, as determined by the Plan Administrator; and

(k) take all other actions consistent with the provisions of the Plan that the Plan Administrator deems reasonably necessary or desirable to administer the Assets in accordance with the Plan, the Confirmation Order, this Agreement and applicable law.

**1.3 Limitations on the Plan Administrator.** Notwithstanding anything to the contrary under applicable law permitting any such action, the Plan Administrator shall not do or undertake any of the following:

(a) receive transfers of any listed stocks or securities, or any readily marketable securities, except as may be received in connection with efforts to liquidate any Assets ("Liquidation Efforts") or as is absolutely necessary or required under the Plan and the Confirmation Order;

(b) retain Cash or cash equivalents in excess of a reasonable amount necessary to (i) fulfill obligations related to the Plan, Confirmation Order or this Agreement, (ii) make specified distributions to the applicable Beneficiaries, (iii) satisfy any liabilities of the post-Effective Date Liquidating Debtors, and (iv) establish and maintain any segregated and allocable reserves contemplated by the Plan;

(c) exercise any investment power other than as authorized in section 1.2(h) hereof or as may be necessitated by prudent liquidation efforts;

(d) accept, guarantee, endorse or otherwise assume or take on, directly or indirectly, any obligation or other liability, monetary or otherwise, on behalf of the Liquidating Debtors other than as required or permitted by the Plan;

(e) take any actions inconsistent with the orderly liquidation of the Assets or as are required by applicable law, the Plan or the Confirmation Order; or

(f) engage in any business or trade except as consistent with the orderly and expeditious liquidation of the Assets; *provided*, *however*, the Plan Administrator shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not conflict or interfere in any manner with the Plan Administrator's administration of the Assets.

**1.4 Compensation of Plan Administrator, Its Professionals and Third Parties.**

(a) The initial Plan Administrator shall receive fair and reasonable compensation, and reimbursement of its reasonable, documented expenses, for the performance of its services as set forth on **Schedule 1** hereto, which compensation and reimbursement shall be paid in Cash from the Plan Administrator Reserve upon deposit of the Plan Administrator Funding in accordance with the Plan and Confirmation Order. Any successor Plan Administrator shall also be entitled to reasonable compensation in connection with the performance of its duties, which compensation may be different from the terms provided herein.

(b) The Plan Administrator, without Bankruptcy Court approval, shall be entitled to employ and pay third parties to assist the Plan Administrator in carrying out its responsibilities or exercising its rights. To the extent that the Plan Administrator employs any Person who would be a Professional if employed by the Debtors in the Chapter 11 Cases before the Effective Date, the Plan Administrator shall be entitled to pay such Person reasonable compensation and reimburse such Person for reasonable, documented expenses. In the event that a dispute arises between the parties regarding payment of any such compensation or expense reimbursement, the Person seeking payment may file a motion for such payment with the Bankruptcy Court, providing notice to the Plan Administrator, and any legal counsel the Plan Administrator may employ.

(c) All reasonable fees, expenses, and disbursements of the Plan Administrator and its professionals shall be paid in Cash from the Plan Administrator Reserve without the requirement that the Plan Administrator seek or obtain approval of the Bankruptcy Court for any such payments or amounts; *provided, however*, no less frequently than on a quarterly basis, an accounting of all fees, expenses, and disbursements made by the Plan Administrator, shall be disclosed in any quarterly operating report filed by the Plan Administrator.

**1.5 Replacement of the Plan Administrator.** The Plan Administrator may resign at any time upon thirty (30) days' prior written notice filed with Bankruptcy Court, *provided*, that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator, unless: (i) the Insurance Coverages (as defined below) terminate for any reason other than the Plan Administrator's unreasonable refusal to renew such Insurance Coverages; or (ii) the Plan Administrator determines in its reasonable judgment that the Plan Administrator Reserve lacks sufficient assets and financial resources to complete the duties and powers assigned to the Plan Administrator under the Plan, the Confirmation Order, and/or this Agreement, in which case such resignation may become effective without appointment of a successor Plan Administrator. The Plan Administrator may be removed by the Bankruptcy Court for cause, upon motion and after notice and a hearing, which motion may be brought by any Beneficiary. Upon its appointment, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Plan Administrator relating to the post- Effective Date Debtor or arising under the Plan shall be terminated; *provided*, *however*, that any previous Plan Administrator's right to indemnification shall survive termination and is subject to Sections 2.1 and 2.2 hereof. In the event the Plan Administrator's appointment terminates by reason of termination with cause, death, or Disability, then after notice and hearing, which motion may be brought by any Beneficiary, the Bankruptcy Court may make such termination immediately effective. Amounts owed to the original Plan Administrator, on the one hand, and any successor Plan Administrator, on the other, shall be allocated between them to reflect their respective periods of service and the services provided; *provided*, *however*, that the previous Plan Administrator shall be compensated for all reasonable fees and expenses accrued through the effective date of its termination, whether or not previously invoiced. In the event of the removal or resignation of any Plan Administrator with cause, such Plan Administrator shall be immediately compensated for all reasonable fees and expenses accrued through the effective date of its termination, whether or not previously invoiced, except to the extent otherwise ordered by the Bankruptcy Court due to a termination with cause.

**1.6 Agreement Continuance.** The death, Disability, dissolution, resignation, or removal of the Plan Administrator shall not terminate this Agreement or revoke any existing agency created by the Plan Administrator pursuant to this Agreement or invalidate any action theretofore taken by the Plan Administrator, and the successor Plan Administrator agrees that the provisions of this Agreement shall be binding upon and inure to the benefit of the successor Plan Administrator, all its successors or assigns, and the Beneficiaries.

**1.7 Incorporation of the Plan.** The Plan is hereby incorporated into this Agreement and made a part hereof by this reference; *provided, however*, to the extent that there is a conflict between the provisions of this Agreement and either the Plan or the Confirmation Order, then the Plan or the Confirmation Order (as applicable) shall govern.

**1.8 Relationship.** This Agreement is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, or as part of a principal and agent relationship, and nor shall the Plan Administrator or the Beneficiaries, or any of them, for any purpose be, or be deemed to be treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers.

**1.9 Appointment as Estate Representative.** Upon the Effective Date, the Plan Administrator is appointed as the duly authorized representative of the Debtor and its Estate in accordance with section 1123 of the Bankruptcy Code with respect to the Assets and for all other purposes of implementing the Plan, including the claims resolution process, and as such, the Plan Administrator succeeds to all of the rights and powers of a trustee in bankruptcy under sections 704 and 1106 of the Bankruptcy Code with respect to the liquidation and Distribution of the Assets for the benefit of the Beneficiaries. The Plan Administrator shall be a party-in-interest for all purposes under these cases within the meaning of section 1109(b) of the Bankruptcy Code.

## ARTICLE II
## LIABILITY OF PLAN ADMINISTRATOR

**2.1 Exculpation; Indemnification.** The Plan Administrator and its professionals shall be exculpated and indemnified pursuant to section 5.4 of the Plan. Consistent with the Plan, the Plan Administrator and any director, officer, member, affiliate, employee, employer, professional, agent, or representative of the Plan Administrator (each "Indemnified Party") shall be defended, held harmless, and indemnified from time to time by the Debtors and their Estates against any and all losses, claims, damages, liabilities, penalties, obligations, and expenses, including the costs for counsel or others in investigating, preparing, or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing this Agreement (including these indemnity provisions), as and when incurred, caused by, relating to, based on, or arising out of (directly or indirectly) the Plan Administrator's acceptance of or the performance or nonperformance of its obligations under this Agreement, the Plan, or the Confirmation Order; *provided*, *however*, such indemnity shall not apply to any such loss, claim, damage, liability, or expense to the extent it is found in a Final Order to be a liability for fraud, willful misconduct, or gross negligence.

**2.2 No Liability for Acts of Successor/Predecessor Plan Administrators.** Upon the appointment of a successor Plan Administrator and the delivery of the then remaining Assets to

the successor Plan Administrator, the predecessor Plan Administrator and any director, officer, member, affiliate, employee, employer, professional, agent, or representative of the predecessor Plan Administrator shall have no further liability or responsibility with respect thereto (other than liabilities arising prior to the cessation of its role as Plan Administrator). A successor Plan Administrator shall have no duty to examine or inquire into the acts or omissions of its immediate or remote predecessor, and no successor Plan Administrator shall be in any way liable for the acts or omissions of any predecessor Plan Administrator, unless a successor Plan Administrator expressly assumes such responsibility. A predecessor Plan Administrator shall have no liability for the acts or omissions of any immediate or subsequent successor Plan Administrator for any events or occurrences subsequent to the cessation of its role as Plan Administrator.

**2.3 Exculpation**. The Plan Administrator and each Indemnified Party shall be deemed exculpated from all claims, liabilities, damages, and causes of action arising from their actions taken or not taken, as the case may be, in pursuit of their duties under this Agreement and the Plan and Confirmation Order, except for claims that are determined by a Final Order to be the result of actual fraud, criminal conduct, or willful misconduct, in all respects by the Liquidating Debtors or Reorganized Debtor.

**2.4 Reliance by Plan Administrator on Documents or Advice of Counsel.** Except as otherwise provided in this Agreement, the Plan Administrator, any director, officer, member, affiliate, employee, employer, professional, agent, or representative of the Plan Administrator may rely, and shall be protected from liability for acting, on any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by the Plan Administrator to be genuine and to have been presented by an authorized party.

**2.5 Insurance.** The Plan Administrator may obtain commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations set forth herein or may be added to the Liquidating Debtors' existing insurance policies (the "Insurance Coverages").

**2.6 Survival.** The provisions of this Article II shall survive the termination of this Agreement and the resignation, death, dissolution, removal, liquidation, or replacement of the Plan Administrator.

## ARTICLE III
## GENERAL PROVISIONS CONCERNING ADMINISTRATION

**3.1 Register of Beneficiaries.** The Plan Administrator shall maintain at all times a register of the Beneficiaries' names, mailing addresses, amounts of the Beneficiaries' respective outstanding Allowed Claims, which may also be the official claims register (the "Register"). The Register shall be limited to those Beneficiaries who are determined by the Plan Administrator as of the Effective Date that are or may become entitled to distributions under the Plan. The Plan Administrator shall cause the Register to be kept at its office or at such other place or places as may be designated by the Plan Administrator from time to time. The initial Register shall be delivered to the Plan Administrator by the Debtors and shall be based on the best available information at the time of the Effective Date. All references in this Agreement to Beneficiaries

shall be read to mean holders of record as set forth in the Register maintained by the Plan Administrator and shall exclude any party not recorded on such Register.

**3.2 Books and Records.** Subject to the terms of the Plan, the Plan Administrator shall maintain books and records relating to the Assets and any income and expenses associated therewith, in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof. Any income earned in connection with the Assets shall be allocated to the respective individual sub accounts of Assets. The Plan Administrator may maintain such books and records through its retained professionals.

**3.3 Interim Reports.** The Plan Administrator shall file with the Bankruptcy Court a report regarding the wind-down of the Liquidating Debtors or other administration of the Assets on a quarterly basis within thirty (30) days after the conclusion of each calendar quarter, which may also be in the form of quarterly operating reports filed with the Bankruptcy Court as required by the Office of the United States Trustee.

**3.4 Filing of Tax Returns.** The Plan Administrator shall be responsible for filing all federal, state, local, and foreign tax returns for the post-Effective Date Liquidating Debtors.

**3.5 Segregation of Reserves.** The Plan Administrator shall segregate and account separately for the Wind Down Reserve and such other remaining reserves and/or escrowed amounts as may be required under the Plan. Any tax liability associated with any of the Assets shall be attributed and allocated to, and satisfied from, the specific Assets giving rise to such tax liability.

**3.6 Right to Seek Court Approval.** The Plan Administrator shall have the right to seek Bankruptcy Court approval or direction with respect to any matter relating to the administration of the Assets or its performance of its duties and responsibilities under the Plan, the Confirmation Order, or this Agreement, even if such approval is not required by the Plan, the Confirmation Order, or this Agreement.

**3.7 Cancellation of Corporate Existence.** As set forth in section 5.10 of the Plan, as soon as reasonably practicable following the Effective Date and the satisfaction of all Allowed Claims pursuant to the terms of the Plan, the Plan Administrator shall take any action necessary to dissolve the Liquidating Debtors and file any and all documents and take any and all other actions that may be necessary and appropriate to cancel the Debtors' corporate existence.

## ARTICLE IV
## BENEFICIARIES

**4.1 Change of Address.** A Beneficiary may, after the Effective Date, select an alternative mailing address by notifying the Plan Administrator in writing of such alternative address. Absent such notice, the Plan Administrator shall not recognize any such change of address. Such notification shall be effective only upon receipt by the Plan Administrator.

**4.2 Effect of Death, Dissolution, Incapacity, or Bankruptcy of Beneficiary.** The death, dissolution, incapacity, or bankruptcy of a Beneficiary shall not entitle the representative or creditors of the deceased, dissolved, incapacitated, or bankrupt Beneficiary to an accounting or to

take any action in any court or elsewhere for the distribution of any Assets or for a partition thereof, nor shall it otherwise affect the rights and obligations of the Beneficiary under this Agreement, the Plan, and the Confirmation Order.

**4.3 Standing.** Except as expressly provided in this Agreement, the Plan, or the Confirmation Order, a Beneficiary does not have standing to institute any action or proceeding at law or in equity against any party with respect to the Assets or any distributions under the Plan (other than against the Plan Administrator to the extent provided in this Agreement) or to direct the Plan Administrator to do so or not to do so.

## ARTICLE V
## DISTRIBUTIONS

**5.1 Plan Provisions.** All payments to be made by the Plan Administrator on account of obligations under the Plan shall be made only in accordance with the Plan, the Confirmation Order, and this Agreement, including as to unclaimed distributions and any distributions which have been returned as undeliverable or for which the Plan Administrator has been unable to effect distribution after reasonable effort; and all limitations in the Plan or Confirmation Order as to minimum distributions shall be applicable.

## ARTICLE VI
## TAXES

**6.1 Compliance with Tax Laws**. As set forth in the Plan, in connection with the Plan and all Distributions thereunder, to the extent applicable, the Plan Administrator is authorized to take any and all actions that may be necessary or appropriate to comply with all tax withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions pursuant to the Plan shall be subject to any such withholding and reporting requirements.

**6.2 Withholding and Reporting Requirements**. The Plan Administrator shall comply with all withholding and reporting requirements as set forth in section 6.12 of the Plan. As set forth in the Plan, the Plan Administrator may require, as a condition to receipt of a distribution, that the holder of an Allowed Claim complete and return a Form W-8, W-9 or a similar tax form, as applicable to each such holder. If the Plan Administrator makes such a request in writing by certified U.S. mail, and the holder fails to comply before the date that is ninety (90) days after the receipt of such request, such holder shall be deemed to have forfeited its rights to all distributions and the amount of such forfeited distributions shall irrevocably revert to the Debtors' Estates or Plan Sponsor as applicable in accordance with the Plan, and any Claim in respect of such distribution shall be discharged, disallowed and forever barred from assertion against the Plan Administrator or the Assets.

**6.3 Request for Expedited Determination of Taxes**. The Plan Administrator shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Effective Date.

**6.4 Treatment of Disputed Claims Reserve.** The Plan Administrator may establish a reserve for Disputed Claims (the "Disputed Claims Reserve") and treat such Disputed Claims Reserve as a "disputed ownership fund" governed by Treasury Regulations Section 1.468B-9 for U.S. federal income tax purposes by timely making an election and by filing all U.S. federal income tax returns with respect to any income attributable to the Disputed Claims Reserve consistent with such treatment, in which event the Plan Administrator shall pay the U.S. federal, state, and local income taxes attributable to the Disputed Claims Reserve, based on the items of income, deduction, credit, or loss allocable thereto. All Beneficiaries shall report, for U.S. federal income tax purposes, consistent with the foregoing. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Disputed Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (ii) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Plan Administrator as a result of the resolutions of such Disputed Claims.

## ARTICLE VII
## TERMINATION OF AGREEMENT

**7.1 Termination of Agreement.** This Agreement shall automatically terminate and the Plan Administrator shall be discharged at such time as: (A) (i) all of the Assets have been liquidated or abandoned, (ii) all duties and obligations of the Plan Administrator hereunder have been fulfilled, (iii) all distributions required to be made by the Plan Administrator under the Plan and this Agreement have been made, (iv) the Chapter 11 Cases of the Liquidating Debtors, including the Claims Administration Case, have been closed, and (v) the corporate existences of each of the Liquidating Debtors have been cancelled; or (B) the Plan Administrator determines in its reasonable judgment that the Plan Administrator Reserve lacks sufficient assets and financial resources to complete the duties and powers assigned to it under the Plan, the Confirmation Order and/or this Agreement.

**7.2 Winding Up and Discharge of the Plan Administrator.** Upon a motion by the Plan Administrator, the Bankruptcy Court may enter an order relieving the Plan Administrator of any further duties, discharging the Plan Administrator, its agents, and employees.

**7.3 Reversion of Wind Down Reserve.** Any funds remaining in the Plan Administrator Reserve upon termination of this Agreement or discharge of the Plan Administrator shall revert to the Plan Sponsor.

**7.4 Destruction of Books and Records.** Upon termination of this Agreement or discharge of the Plan Sponsor pursuant to the Confirmation Order, the Plan Sponsor shall offer to deliver the books and records of the Debtors to the Plan Sponsor at the Plan Sponsor's expense. Upon refusal of the Plan Sponsor, the Plan Administrator shall provide for the destruction of the Debtors' books and records.

## ARTICLE VIII
## MISCELLANEOUS PROVISIONS

**8.1 Amendments.** The Plan Administrator may modify, supplement, or amend this Agreement but only to clarify any ambiguity or inconsistency, or render the Agreement in compliance with its stated purposes, and only if such amendment does not materially and adversely affect the interests, rights, treatment, or distributions of any Beneficiary. The Plan Administrator, with the approval of the Bankruptcy Court, may modify, supplement, or amend this Agreement in any way that is not inconsistent with the Plan or the Confirmation Order.

**8.2 Waiver.** No failure by the Plan Administrator to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

**8.3 Cumulative Rights and Remedies.** The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity.

**8.4 No Bond Required.** Notwithstanding any state law to the contrary, the Plan Administrator (including any successor Plan Administrator) shall be exempt from giving any bond or other security in any jurisdiction.

**8.5 Relationship to the Plan.** The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order. In the event that any provision of this Agreement is found to be inconsistent with a provision of the Plan or the Confirmation Order, the provisions of the Plan or the Confirmation Order, as applicable, shall control.

**8.6 Applicable Law.** This Agreement, and the rights and obligations of the Plan Administrator are to be governed by and construed and administered according to the laws of the state of Texas and the Bankruptcy Code.

**8.7 Retention of Jurisdiction.** Notwithstanding the Effective Date, and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits, and issues that may arise in connection therewith, including, without limitation, this Agreement, or any Entity's obligations incurred in connection herewith, including, without limitation, any action against the Plan Administrator or any Person retained by the Plan Administrator.

**8.8 Severability.** In the event that any provision of this Agreement or the application thereof to any person or circumstance shall be determined by the Bankruptcy Court (or any other court of competent jurisdiction) to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstances, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

**8.9 Limitation of Benefits.** Except as otherwise specifically provided in this Agreement, the Plan, or the Confirmation Order, nothing herein is intended or shall be construed

to confer on or to give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Agreement.

**8.10 Integration.** This Agreement, the Plan, and the Confirmation Order constitute the entire agreement with, by, and among the parties thereto, and there are no representations, warranties, covenants, or obligations except as set forth herein, in the Plan, and in the Confirmation Order. This Agreement, together with the Plan and the Confirmation Order, supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder. Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Agreement.

**8.11 Interpretation.** The enumeration and Section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof. Unless context otherwise requires, whenever used in this Agreement the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations, and corporations. The words herein, hereby, and hereunder and words with similar import, refer to this Agreement as a whole and not to any particular Section or subsection hereof unless the context requires otherwise.

**8.12 Counterparts.** This Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document.

**8.13 Preservation of Privilege.** In connection with any rights, claims, and causes of action that constitute Assets, any attorney-client privilege, work product privilege, or other privilege or immunity attaching to any documents or communications (whether oral or written) in respect of those assets in favor of the Debtors shall vest in the Plan Administrator. The Plan Administrator shall seek to preserve and protect all applicable privileges and work-product relating to the claims resolutions process and any causes of action of the Estate, including but not limited to any attorney-client privilege or work product privilege attaching to any documents or communications (whether written or oral). The Plan Administrator's receipt of such information shall not waive any such privileges, and all such privileges are expressly preserved; provided, for the avoidance of doubt, upon the Effective Date, such privileges shall belong to the Plan Administrator and shall be waivable by the Plan Administrator.

**8.14 Notice.** All notices, requests, and demands to or upon the Plan Administrator, to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by electronic transmission, when received and telephonically confirmed, addressed as follows:

Erik White
c/o Harney Partners
8911 N. Capital of Texas Highway, Ste 2120
Austin, TX 78759

ewhite@harneypartners.com

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers or representatives, all as of the date first above written.

[SIGNATURE PAGES FOLLOW]

**<u>THE DEBTORS</u>**

**WHITE ROCK MEDICAL CENTER, LLC**
**And its affiliate debtors and debtors-in-possession**

________________________________________
Name: Erik White
Title: Solely in his capacity as Chief Restructuring Officer of the Debtors

**<u>THE PLAN ADMINISTRATOR</u>**

By:______________________________________
Name: Erik White
Solely in his capacity as Plan Administrator, and not in his individual capacity

**Schedule 1**

Compensation of Plan Administrator

Standard hourly rates

| Professional Type and Level | 2026 – 2027 Hourly Rate |
|---|---|
| President / EVP | $700 to $900 / hour |
| Managing Director | $550 to $750 / hour |
| Senior Manager / Director | $450 to $600 / hour |
| Manager | $350 to $500 / hour |
| Senior Consultant | $300 to $400 / hour |
| Support Staff | $180 to $300 / hour |