# Side Letter Agreement

This Side Letter Agreement (this **"Side Letter"**) is entered into as of September [___], 2026 (the **"Effective Date"**), by and between GMR EAST DALLAS HOSPITAL, LLC, a Delaware limited liability company ("**GMR Hospital**"), and GMR EAST DALLAS LAND, LLC, a Delaware limited liability company ("**GMR Land**" and together with GMR Hospital, individually and/or collectively, as the context may require **"Landlord"**), and WHITE ROCK MEDICAL CENTER, LLC, a Delaware limited liability company (**"Tenant"**).

## Recitals

A. GMR Hospital is a party, and Tenant is a successor party, to that certain Lease by and between GMR EAST DALLAS HOSPITAL, LLC as lessor and PIPELINE EAST DALLAS, LLC as lessee dated as of March 1, 2018, as amended, modified, supplemented, renewed, or restated from time to time (the **"Hospital Building Lease"**), relating to the real property and improvements commonly known as White Rock Medical Center, 9440 Poppy Drive, Dallas, Texas 75218 (the **"Hospital Building Premises"**).

B. GMR Land is a party, and Tenant is a successor party, to that certain Lease by and between GMR EAST DALLAS LAND, LLC as lessor and PIPELINE EAST DALLAS, LLC as lessee dated as of March 1, 2018, as amended, modified, supplemented, renewed, or restated from time to time (the **"Ground Lease"** and, together with the Hospital Building Lease, individually and/or collectively, as the context may require, the "**Hospital Lease**"), relating to the real property and improvements commonly known as: a medical campus located at 9440 Poppy Drive, Dallas, Texas 75218 including (1) a three story parking garage (the "**Garage**"); (2) a medical office building ground leased to Welltower; (3) a medical office building ground leased to 2GR Equity, having a building address of 1151 N.Buckner Blvd.; and (4) the Land (the **"Ground Lease Premises"** and, together with the Hospital Premises, individually and/or collectively, as the context may require, the "**Premises**").

C. Tenant owns and operates an acute care hospital at or in connection with the Premises.

D. The parties desire to set forth their agreement regarding the repayment by Tenant to Landlord of the Lease Cure Payment from certain Net Cash from Operations (as defined below) of Tenant, on the terms set forth in this Side Letter.

For good and valuable consideration, the receipt and sufficiency of which are acknowledged, Landlord and Tenant agree as follows:

### 1. Incorporation of Hospital Lease

Hospital Lease is hereby incorporated into this Side Letter by reference as if fully set forth in this Side Letter. Except as expressly provided in this Side Letter, all terms, conditions, provisions, rights, remedies, obligations, and agreements contained in the Hospital Lease are incorporated into and made a part of this Side Letter and will apply to this Side Letter and the parties' performance under this Side Letter solely to the extent relevant to the subject matter of this Side Letter and with such changes as are necessary to apply them to this Side Letter.

## 2. Definitions

For purposes of this Side Letter, the following terms have the meanings set forth below:

**"Business Day"** means any day other than a Saturday, Sunday, or other day on which commercial banks in the state whose law governs the Hospital Lease are authorized or required by law to close.

**"Hospital Lease Cure Payment"** means the stipulated cure amount of **$2,603,803.42** paid to Landlord pursuant to **11 U.S.C. § 365(b)(1)(A)** to assume the Hospital Lease.

The unpaid principal balance of the Hospital Lease Cure Payment will accrue simple interest, calculated on a 30/360 basis, at a rate per annum equal to: (a) **0%** from the Effective Date until the first anniversary of the Effective Date; (b) **5%** from and after the first anniversary of the Effective Date until the second anniversary of the Effective Date; and (c) **10%** from and after the second anniversary of the Effective Date until the Hospital Lease Cure Payment has been paid in full. Interest accrued under this Section 2 will accrue on the unpaid principal balance of the Hospital Lease Cure Payment only and will not itself bear interest.

Accrued and unpaid interest will be payable in accordance with Section 3 and, solely for purposes of determining the total amount due and owing under this Side Letter, will be included in the outstanding balance of the Hospital Lease Cure Payment; provided that the inclusion of accrued and unpaid interest in such outstanding balance will not cause interest to accrue on accrued interest.

**"Minimum Working Capital Reserve"** means, as of any determination date, $1,500,000.

**"Net Cash from Operations"** means the net cash from Tenant's operations during the applicable calendar month, determined in a manner consistent with the Statement of Cash Flows prepared in accordance with Generally Accepted Accounting Principles (GAAP), before any distributions to equity holders or affiliates and excluding non-cash revenues, non-cash expenses, depreciation, amortization, gains or losses from asset sales, financing activities, and investing activities. For clarity, Net Cash from Operations is a cash-basis accounting measurement of cash received and cash expended, it is not an accrual-based accounting measurement (GAAP Net Income).

**"Working Capital Cash Reserve"** means a segregated bank account established and maintained by Tenant solely to fund Tenant's cash expenses for any calendar month in which Net Cash from Operations is less than zero.

Notwithstanding anything to the contrary in this Side Letter, the entire outstanding balance of the Hospital Lease Cure Payment, including all accrued and unpaid interest, will be due and payable in full no later than the fifth anniversary of the Effective Date.

## 3. Monthly Payment Obligation

### 3.1 Scheduled Monthly Payments

No payment will be due under this Side Letter for the period beginning on the Effective Date and ending on the last day of the calendar month in which the Effective Date occurs. Beginning on the

fifth Business Day of the second calendar month following the calendar month in which the Effective Date occurs, and continuing on the fifth Business Day of each calendar month thereafter, Tenant will pay to Landlord the amount determined under Section 3.2 for the immediately preceding full calendar month.

**3.2 Amount of Monthly Payment**

For each full calendar month, Net Cash from Operations for the immediately preceding full calendar month will be applied first to fund or replenish the Working Capital Cash Reserve until its balance is not less than the Minimum Working Capital Reserve. To the extent any Net Cash from Operations remains after that funding or replenishment (the "**Available Cash**"), Tenant will pay to Landlord (the "**Monthly Payment**") an amount equal to the greater of:

(a) thirty percent (30%) of Available Cash; and

(b) the Minimum Payment Amount for such month, but in no event greater than Available Cash.

If Available Cash is zero or less for any calendar month, no Monthly Payment will be due for that calendar month.

**3.3 Minimum Payment Amount**

For purposes of this Side Letter, **"Minimum Payment Amount"** means, for any calendar month for which a payment is due under this Section 3: (a) **$50,000** for each such month ending on or before the first anniversary of the Effective Date; and (b) **$100,000** for each such month ending after the first anniversary of the Effective Date.

**3.4 Application and Final Payment**

All amounts paid by Tenant under this Side Letter will be made in immediately available funds to the account designated by Landlord in writing from time to time and will be applied first to accrued and unpaid interest and then to the unpaid principal balance of the Hospital Lease Cure Payment. Tenant will continue to make payments under this Section 3 until the Hospital Lease Cure Payment, together with all accrued and unpaid interest, has been paid in full or until the fifth anniversary of the Effective Date at which time the remaining amount due on the Hospital Lease Cure Payment, together with all accrued and unpaid interest, shall be paid in full, at which time Tenant's obligation to make payments under this Section 3 will terminate automatically. Notwithstanding the foregoing, in no event will Tenant be required to pay under this Side Letter an amount greater than the then-outstanding balance of the Hospital Lease Cure Payment, inclusive of accrued and unpaid interest.

4. **Hospital Payment Supplementals**

**4.1 Definition.** "**Hospital Payment Supplementals**" means any supplemental, incentive, directed-payment, uncompensated-care, delivery-system-reform, or other non-ordinary-course payment, distribution, reimbursement, settlement, or similar amount received by or payable to Tenant under a federal, state, local, governmental, Medicaid, Medicare, managed-care, or other healthcare-payment program, in each case attributable to operation of the acute care hospital at or

in connection with the Premises.

**4.2 Inclusion in Net Cash From Operations**. Before inclusion in Net Cash from Operations, Tenant may apply the Hospital Payment Supplemental to: (a) costs, expenses, assessments, provider taxes, fees, and other amounts directly attributable to obtaining, receiving, retaining the Hospital Payment Supplemental; and (b) amounts required to be paid or reserved by applicable law or Hospital Payment Supplemental program requirements.

**4.3 Payment; Reporting; Reconciliation.** The net amount of Hospital Payment Supplementals will be included in Net Cash from Operations for the calendar month in which Tenant receives it under Section 3.2. The applicable Monthly Calculation Certificate will identify the amount of Hospital Payment Supplemental received, permitted deductions as provided in Section 4.2, and the net amount of Hospital Payment Supplementals included in Net Cash from Operations.

**4.4 No Double Counting.** No Hospital Payment Supplemental or deduction under Section 4.2, or portion of it, may be included more than once in calculating Net Cash from Operations, Available Cash, or a Monthly Payment under this Side Letter.

**5. Monthly Calculation Certificate**

Together with each payment required under Section 3, Tenant will deliver to Landlord a certificate (each, a **"Monthly Calculation Certificate"**) signed by Tenant's chief financial officer, controller, chief restructuring officer, or other authorized financial officer, setting forth in reasonable detail for the immediately preceding full calendar month: (a) supporting workpaper fairly presenting the calculation of Net Cash from Operations; (b) the amount payable to Landlord under Section 3; and (c) the remaining unpaid principal balance of the Hospital Lease Cure Payment and accrued and unpaid interest after giving effect to the payment then being made. Each Monthly Calculation Certificate will include a certification by the signing officer that, to such officer's knowledge, the calculation is true, correct, and complete in all material respects and has been prepared in accordance with this Side Letter. Tenant will retain its books, records, and supporting workpapers reasonably necessary to prepare each Monthly Calculation Certificate for not less than three (3) years after delivery of such Monthly Calculation Certificate. During the terms of this Side Letter and until all amounts owing hereunder have been paid in full, Tenant shall promptly furnish to Landlord, upon request, such financial, operational, and other information relating to Tenant, the Premises, and the hospital operations conducted thereon as Landlord may reasonably request in order to monitor Tenant's financial condition, operating performance, liquidity, independently verify compliance with this Side Letter, and ability to satisfy its obligations hereunder, including without limitation: (a) corresponding monthly bank statements and account reconciliations; (b) read-only online banking access, account-viewing credentials, or equivalent electronic access to bank account information and transaction history, to the extent reasonably available from Tenant's financial institutions; (c) general ledgers, trial balances, accounts receivable and accounts payable aging reports, detailed revenue and expenses reports, monthly financial statements; and (d) such additional books, records, reports, and supporting information as Landlord may reasonably request to verify the accuracy and completeness of any Monthly Calculation Certificate or calculation of Net Cash from Operations. Tenant shall further make appropriate financial and operational personnel available to discuss such information with Landlord upon reasonable notice.

**6. Default; Remedies**

Any failure by Tenant to pay any amount due under Section 3 when due, or to deliver any Monthly Calculation Certificate required under Section 5 when due, will constitute a default under this Side Letter. Notwithstanding the foregoing, no such default will become an event of default for purposes of Landlord's exercise of remedies unless and until the expiration of any applicable notice and cure period expressly provided under the Hospital Lease for the most analogous monetary default or non-monetary default, as applicable. Upon the occurrence and during the continuance of an event of default under this Side Letter, Landlord will have the right to exercise any and all rights and remedies available to Landlord under the Hospital Lease, at law, or in equity, and the parties acknowledge and agree that the rights and remedies of Landlord under the Hospital Lease are incorporated into this Side Letter by reference and will apply to such event of default to the same extent as if set forth fully in this Side Letter.

**7. Notices; Forum; Successors and Assigns**

All notices, demands, consents, approvals, requests, and other communications given under this Side Letter will be given in the manner required under the Hospital Lease, and the notice provisions of the Hospital Lease are hereby incorporated into this Side Letter by reference solely to the extent relevant to the subject matter of this Side Letter. Any forum selection, venue, dispute resolution, arbitration, consent to jurisdiction, or similar enforcement provisions contained in the Hospital Lease are also incorporated into this Side Letter by reference solely to the extent relevant to the subject matter of this Side Letter and will govern any dispute arising out of or relating to this Side Letter. This Side Letter will be binding upon and inure to the benefit of Landlord and Tenant and their respective permitted successors and assigns.

**8. No Waiver; Hospital Lease in Effect**

Except as expressly set forth in this Side Letter, nothing in this Side Letter amends, waives, impairs, or otherwise modifies the Hospital Lease or any rights or remedies of Landlord or Tenant under the Hospital Lease. The Hospital Lease remains in full force and effect in accordance with its terms.

**9. Conflict with Hospital Lease**

If there is any conflict between this Side Letter and the Hospital Lease, this Side Letter will control solely with respect to the subject matter expressly addressed in this Side Letter.

**10. Entire Agreement**

This Side Letter, together with the Hospital Lease as incorporated into this Side Letter by reference, constitutes the entire agreement of the parties with respect to the subject matter of this Side Letter and supersedes all prior and contemporaneous oral and written agreements, negotiations, and understandings with respect to such subject matter.

**11. Amendments**

This Side Letter may be amended, modified, or supplemented only by a written instrument signed by Landlord and Tenant.

**12. Counterparts; Electronic Signatures**

This Side Letter may be executed in counterparts, each of which will be deemed an original, and all of which together will constitute one and the same instrument. Signatures delivered by electronic mail in portable document format (.pdf) or by other electronic means intended to preserve the original graphic and pictorial appearance of a document will be deemed to have the same legal effect as original signatures.

**13. Governing Law**

This Side Letter will be governed by and construed in accordance with the governing law provisions of the Hospital Lease.

[Signature Pages Follow]

**Signatures**

LANDLORD:

GMR EAST DALLAS HOSPITAL, LLC

By: ___________________________
Name:
Title:

GMR EAST DALLAS LAND, LLC

By: ___________________________
Name:
Title:

TENANT:

WHITE ROCK MEDICAL CENTER, LLC

By: ___________________________
Name:
Title: