# AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT

# OF

# WHITE ROCK MEDICAL CENTER LLC

THIS AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT (this *"Agreement"*) of WHITE ROCK MEDICAL CENTER, LLC, a Delaware limited liability company (the *"Company"*), is made and entered into as of [____], 2026, by and between WHITE ROCK MEDICAL HOLDINGS, LLC, a Delaware limited liability company as the sole member of the Company (the *"Member"*), and the Company.

WHEREAS, the Company was formed under the laws of the State of Delaware by the filing of a Certificate of Formation with the Secretary of State of the State of Delaware on November 30, 2017; and

WHEREAS, the Member desires to enter into this Agreement to set forth the terms and conditions governing the operation and management of the Company.

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## SECTION 1. DEFINITIONS.

The following terms used in this Agreement shall have the meanings set forth below (unless otherwise expressly provided herein):

*Section 1.1.* *"Act"* shall mean the Delaware Limited Liability Company Act, as amended from time to time.

*Section 1.2.* *"Certificate"* shall mean the Certificate of Formation of the Company properly adopted and filed with the Secretary of State of the State of Delaware pursuant to the Act, as the same may be amended in accordance with the Act and this Agreement from time to time.

*Section 1.3.* *"Fiscal Year"* shall commence on January 1st and end on the following December 31st of each year.

*Section 1.4* *"Governing Body"* shall mean the governing body of the Company that the Manager appoints to manage and oversee the clinical day-to-day operations of the Company, and fulfill such duties and requirements required by CIHQ or other applicable accreditation organization body; 42 CFR 482.12; 26 TAC 505.41(f); or otherwise required by law, applicable licensing, certification or accreditation bodies.

*Section 1.5* *"Manager"* shall mean the entity engaged through the Management Services Agreement.

*Section 1.6.* *"Management Agreement"* shall mean the Management Services Agreement by and between the Company and the Manager.

*Section 1.7.* *"Member"* shall mean White Rock Medical Center Holdings, LLC as the sole member of the Company.

*Section 1.8.* *"Member Consent"* shall have the meaning set forth in the Member Operating Agreement.

*Section 1.9.* *"Member Operating Agreement"* shall mean that certain Limited Liability Company Agreement of the Member, as amended from time to time.

*Section 1.9.* *"Membership Interest"* shall mean the Member's share of the Profits and Losses of the Company, the right to receive distributions of the Company and any right to vote or participate in the management or affairs of the Company.

*Section 2.0.* *"Profits and Losses"* shall mean, for any Fiscal Year, the net income or net loss of the Company, as the case may be, for such Fiscal Year or fraction thereof, as determined for federal income tax purposes in accordance with the accounting method used by the Company.

SECTION 2. FORMATION OF COMPANY.

*Section 2.1.* *Formation.* The Company was formed as a Delaware limited liability company at the time of the filing of the Certificate with the Delaware Secretary of State on November 30, 2017.

*Section 2.2.* *Name.* The name of the Company is White Rock Medical Center, LLC. The Company may also conduct its business under one or more assumed names as determined by the Manager.

*Section 2.3.* *Principal Place of Business.* The principal place of business of the Company shall be [______]. The Company may locate its place of business at any other place or places as the Manager may from time to time deem advisable.

*Section 2.4.* *Registered Office and Registered Agent.* The registered agent of the Company for service of process in the State of Delaware and the registered office of the Company in the State of Delaware shall be that person or entity and location reflected in the Certificate. In the event the registered agent ceases to act as such for any reason or the registered office shall change, the Manager shall promptly designate a replacement registered agent or file a notice of change of address, as the case may be, in the manner provided by law.

*Section 2.5. Term.* The term of the Company shall be perpetual from the date of filing of the Certificate with the Secretary of State of the State of Delaware, unless the Company is earlier dissolved in accordance with the provisions of this Agreement or the Act.

*Section 2.6. Purpose.* The purpose of the Company is to engage in any lawful act or activity for which limited liability companies may be formed under the Act and to engage in any and all activities necessary or incidental thereto, including engaging in activities to preserve the hospital license held by the Company (the "Hospital License") and to conduct all business necessary to preserve the Hospital License. Without limiting the generality of the foregoing, the purpose of the Company includes (a) entering into service agreements, license agreements, and other arrangements with third parties related to the Hospital License, and (b) obtaining loans from the Manager or receiving capital injections as necessary to preserve the Hospital License.

*Section 2.7. Members.* The Member (a) shall be the only member of the Company and (b) owns 100% of the Membership Interests of the Company. One or more additional members may be admitted to the Company with the prior written consent of the Member. Prior to the admission of any such additional members to the Company, the Member shall amend this Agreement to make such changes as the Member shall determine to reflect the fact that the Company shall have such additional members. Each additional member shall execute and deliver a supplement or counterpart to this Agreement, as necessary. The Company will not issue any certificates to evidence ownership of the Membership Interests.

*Section 2.8. Capital Contributions.* The Member hereby agrees to contribute to the Company such cash, property or services as determined by the Member.

## SECTION 3. BOOKS, RECORDS AND PROFITS AND LOSSES.

*Section 3.1. Books and Records.* The Company shall maintain the books and records of the Company's business and affairs as required by the Act and as deemed appropriate by the Manager.

*Section 3.2. Profits and Losses.* Profits and Losses of the Company shall be allocated to the Member.

## SECTION 4. MANAGEMENT.

*Section 4.1. Manager-Managed.* Subject to the limitations set forth in this Agreement and to the requirement of Member Consent where applicable under the Member Operating Agreement, the management and control of the Company and its business shall be vested exclusively in a single manager (the *"Manager"*).

*Section 4.2. Manager Power and Authority.* Subject to the requirement of Member Consent where applicable under the Member Operating Agreement and except as delegated to the Governing Body, the management, control, and direction of the Company and its operations, business, and affairs shall be vested exclusively in the Manager, who shall have the right, power,

and authority to carry out any and all purposes of the Company and to perform or refrain from performing any and all acts that the Manager may deem necessary and appropriate.

*Section 4.3. Governing Body.*

(a) The Manager shall appoint the Governing Body of the Company to manage and oversee the clinical day-to-day operations of the Company as required by 42 CFR 482.12, 26 TAC 505.41(f), and applicable law, licensing, certification or accreditation bodies. The Governing Body shall report to and be subject to the authority of the Manager. The Manager shall perform those duties specified in the Management Services Agreement that are not otherwise delegated to the Governing Board or required by law, applicable licensing, certification or accreditation bodies to be performed by the Governing Body.

(b) Each member of the Governing Body shall hold office until a successor is elected and qualified or until the member is no longer employed by, contracted with, or in any way affiliated with the Company. Any vacancy occurring with the members of the Governing Body may be filled by the Manager. Any member of the Governing Body may be removed by the Manager at any time and for any reason.

(c) Subject to the approval of the Manager and subject to the delegation of authority to the Manager under the Management Agreement, the Governing Body shall be entitled to establish rules, regulations, policies, and procedures relating to its and the Company's operations in furtherance of its functions.

*Section 4.4. Resignation; Removal.* A member of the Governing Body may resign at any time by giving written notice to the Company and the Manager. The Manager may remove a member of the Governing Body in its discretion, at any time and for any reason.

*Section 4.5. Major Decisions.* Notwithstanding anything to the contrary contained in this Agreement, the prior written consent of the Manager (and, to the extent any such action requires Member Consent) shall be required to authorize any matter enumerated below:

(a) taking any action for the (1) commencement of a voluntary case under any applicable bankruptcy, insolvency or similar law now or hereafter in effect, (2) consent to the entry of any order for relief in an involuntary case under any such law, (3) consent to the appointment or taking possession by a receiver, liquidator, assignee, custodian, trustee or sequestrator (or similar official) of the Company or of any substantial part of the property thereof, (4) making by the Company of a general assignment for the benefit of creditors, or (5) making of any other arrangement or composition with creditors generally to modify the terms of payment of, or otherwise restructure, their obligations;

(b) dissolving or liquidating the Company;

(c) the sale, exchange, lease or other disposition of all or substantially all the property of the Company;

(d) any merger of the Company with any other entity; or

(e) admitting additional or substituted members of the Company.

*Section 4.6. Officers*. As delegated in the Management Agreement, the Manager may, from time to time, designate one or more officers with such titles as may be designated by the Manager to act in the name of the Company with such authority as may be delegated to such officers by the Manager subject to the limitations set forth in this Agreement (each such designated person, an *"Officer"*). Any such Officer shall act pursuant to such delegated authority until such Officer is removed by the Manager. Any action taken by an Officer designated by the Manager pursuant to authority delegated to such Officer shall constitute the act of and serve to bind the Company.

*Section 4.7. Capital and Debt Authority*. Subject to the requirement of Member Consent where applicable under the Member Operating Agreement, the Manager is hereby authorized to issue capital or incur debt on behalf of the Company as the Manager determines is necessary or advisable. Without limiting the generality of the foregoing, the Manager may (a) cause the Company to accept loans from the Manager to the Company on such terms as the Manager deems appropriate, and (b) arrange for or accept capital injections from the Member or other sources, in each case as necessary to preserve the Hospital License and to carry out the purposes of the Company as set forth in Section 2.6.

SECTION 5. LIMITATION OF LIABILITY; INDEMNIFICATION.

*Section 5.1. Liability of the Member*. Except as otherwise required under the Act, the debts, obligations, and liabilities of the Company, whether arising in contract, tort, or otherwise, shall be solely the debts, obligations, and liabilities of the Company, and the Member shall not be obligated personally for any such debt, obligation, or liability of the Company solely by reason of being a member of the Company.

*Section 5.2. Indemnification.* To the fullest extent permitted under the Act, the Member and the Manager shall each be entitled to indemnification and advancement of expenses from the Company for and against any loss, damage, claim, or expense (including attorneys' fees) whatsoever incurred by the Member or Manager, as the case may be, relating to or arising out of any act or omission or alleged act or omission (whether or not constituting negligence or gross negligence) performed or omitted by the Member or the Manager, as the case may be, on behalf of the Company; *provided, however*, that any indemnity under this Section 5.2 shall be provided out of and to the extent of Company assets only, and neither the Member, the Manager nor any other person shall have any personal liability on account thereof.

SECTION 6. DISSOLUTION AND TERMINATION.

*Section 6.1. Dissolution.* The Company shall dissolve, and its affairs shall be wound up upon the first to occur of the following: (a) the written consent of the Member; or (b) any other event or circumstance giving rise to the dissolution of the Company under Section 18-801 of the Act, unless the Company's existence is continued pursuant to the Act.

*Section 6.2. Winding-up the Company's Business and Affairs.* Upon dissolution of the Company, the business and affairs of the Company shall be wound up by the Manager or the Member in accordance with the Act.

*Section 6.3. Distribution of Assets.* In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets of the Company shall be applied as follows: (i) first, to creditors, to the extent otherwise permitted by law, in satisfaction of liabilities of the Company (whether by payment or the making of reasonable provision for payment thereof); (ii) second, to the establishment of and additions to reserves that are determined to be reasonably necessary for any contingent unforeseen liabilities or obligations of the Company; and (iii) thereafter, to the Member.

*Section 6.4. Certificate of Cancellation.* Upon the completion of the winding up of the Company, the Member shall file a Certificate of Cancellation in accordance with the Act.

SECTION 7. MISCELLANEOUS PROVISIONS.

*Section 7.1. Application of Delaware Law.* This Agreement, and the application or interpretation hereof, shall be governed exclusively by its terms and by the laws of the State of Delaware and, more specifically, the Act.

*Section 7.2. Severability.* If any provision of this Agreement or the application thereof shall be invalid, illegal or unenforceable to any extent, the remainder of this Agreement and the application thereof shall not be affected and shall be enforceable to the fullest extent permitted by law.

*Section 7.3. Rights of Creditors and Third Parties under This Agreement.* This Agreement is made for the exclusive benefit of the Company and the Member and their respective successors and assignees. This Agreement is expressly not intended for the benefit of any creditor of the Company or any other person. To the maximum extent permitted by law, no such creditor or third party shall have any rights under this Agreement or any agreement between the Company or the Member with respect to any capital contribution or otherwise. Notwithstanding the foregoing, the Manager is an intended third-party beneficiary of this Agreement and shall have the right to enforce directly against the Company any rights or obligations of the Company in favor of the Manager under this Agreement, including without limitation the indemnification obligations set forth in Section 5.2. For the avoidance of doubt, the indemnification obligations set forth in Section 5.2 shall extend to the members, managers, officers, employees, and agents of the Manager, to the extent such persons are acting in furtherance of the Manager's authority under this Agreement.

*Section 7.4. Binding Effect.* Except as otherwise provided in this Agreement, every covenant, term and provision of this Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.

*Section 7.5.* *Amendments.* This Agreement may be altered, amended or restated by action of the Member.

*Section 7.6.* *Counterparts*. This Agreement may be executed in counterparts, each of which shall be deemed to be an original. A signed copy of this Agreement delivered by facsimile, email or other means of electronic transmission, including DocuSign, shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

[**SIGNATURE PAGE FOLLOWS**]

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first set forth above.

MEMBER:

**WHITE ROCK MEDICAL HOLDINGS, LLC**

By:____________________________________
Name:
Its:

COMPANY:

**WHITE ROCK MEDICAL CENTER, LLC**

By:____________________________________
Name:
Its: