United States Courts
Southern District of Texas
FILED
AUG 28 2026
Nathan Ochsner, Clerk of Court

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| **WHITE ROCK MEDICAL CENTER, LLC, et al.,** | § | Case No. 26-90115 (ARP) |
| | § | (Jointly Administered) |
| Debtors. | § | |
| | § | |
| | § | |
| | § | |
| | § | |

**JOINT OBJECTION OF ADAM NEWMAN, ALLISON INSLEY, MISHAWNA BOHNER, AND JEREMY SHANE BISON TO CONFIRMATION OF THE SECOND PLAN OF REORGANIZATION**

Adam Newman, Allison Insley, Mishawna Bohner, and Jeremy Shane Bison (collectively, the "CRNA Claimants"), creditors and parties in interest, file this limited objection (the "Objection") to confirmation of the Second Plan of Reorganization of White Rock Medical Center, LLC and its Affiliated Debtors, as Modified on July 17, 2026 (the "Plan"), attached as Exhibit A to the Disclosure Statement [Dkt. No. 386]. The CRNA Claimants respectfully state as follows:

## I. PRELIMINARY STATEMENT

**1.** Each CRNA Claimant timely filed a proof of claim on April 2, 2026, asserting damages arising from Heights Healthcare of Texas, LLC's alleged breach of identical ninety-day termination-notice provisions. Each proof of claim asserts alternative treatment: (a) an administrative-expense claim under 11 U.S.C. § 503(b)(1)(A); (b) a priority wage claim under 11 U.S.C. § 507(a)(4), to the extent applicable and subject to the statutory cap; and (c) a general unsecured claim for any remaining amount.

**2.** The Court has not entered an order allowing, disallowing, estimating, subordinating, or classifying any of the CRNA Claimants' claims. Nor has the Court determined whether any portion qualifies for administrative-expense or wage-priority treatment. The CRNA Claimants therefore object only to the extent confirmation of the Plan or entry of a confirmation order could be construed to adjudicate, waive, reclassify, discharge, release, or otherwise prejudice those unresolved issues without a claims-allowance proceeding and an opportunity to be heard.

**3.** The objection can be resolved through express language in the confirmation order confirming that: (i) confirmation does not determine the allowance, amount, or priority of the claims; (ii) any Class 5 voting treatment is provisional and is not a waiver or admission; (iii) the claims remain subject to adjudication under sections 502, 503, and 507 of the Bankruptcy Code; and (iv) the Debtors or Plan Administrator will reserve sufficient funds

to pay any portion ultimately allowed as an administrative or priority claim in the manner required by the Bankruptcy Code and the Plan.

## II. BACKGROUND

**4.** Heights Healthcare of Texas, LLC acquired White Rock Medical Center in October 2023 and entered into written employment agreements with the CRNA Claimants for certified registered nurse anesthetist services. The agreements provided annual compensation of $275,000 for Newman, Insley, and Bohner and $295,000 for Bison, including his Chief CRNA stipend.

**5.** Section 4.3 of each agreement permitted termination without cause only upon ninety days' written notice. The CRNA Claimants contend that Heights Healthcare terminated them without cause on April 30, 2024, without providing or paying the contractually required notice period. Heights Healthcare has disputed liability in the parties' prepetition arbitration.

**6.** The CRNA Claimants calculate their contract damages as follows: Newman, $67,808; Insley, $67,808; Bohner, $67,808; and Bison, $72,740, exclusive of any allowable attorneys' fees and costs. Their proofs of claim and supporting Joint Claimant Position Statement identify the contracts, damages calculations, asserted priorities, and alternative general unsecured treatment.

**7.** The CRNA Claimants assert that their specialized anesthesia services generated revenue and accounts receivable for the hospital and preserve their request for allowance under section 503(b)(1)(A). Alternatively, because the alleged termination occurred shortly before the asserted May 31, 2024 cessation of the Debtor's business, they assert wage priority under section 507(a)(4), subject to the statutory requirements and cap. They assert the balance as general unsecured breach-of-contract claims.

**8.** The Plan treats Allowed Administrative Claims outside the classified claims and provides for payment in cash equal to the unpaid allowed amount. It also expressly recognizes that administrative claims already asserted through timely proofs of claim are not required to be duplicated by the later Administrative Claims Bar Date. See Plan Art. II; Disclosure Statement § 4.3 [Dkt. No. 386].

**9.** The Plan provides full payment of Allowed Other Priority Claims in Class 1 and pro rata treatment of Allowed General Unsecured Claims in Class 5. The CRNA Claimants understand that the Debtors may dispute their asserted administrative and priority treatment. That dispute, however, has not been adjudicated merely because the claims may have been issued Class 5 ballots or treated as Class 5 claims for solicitation purposes.

**10.** By Order entered August 11, 2026 [Dkt. No. 414], the Court extended the Confirmation Objection Deadline and Voting Deadline to August 28, 2026, at 4:00 p.m. Central Time and continued the Confirmation Hearing to September 3, 2026, at 10:00 a.m. Central Time. This Objection is timely.

## III. OBJECTION

### A. CONFIRMATION MUST PRESERVE THE UNRESOLVED ALLOWANCE AND PRIORITY OF THE CLAIMS.

**11.** Section 1129(a)(9) requires specified treatment of allowed administrative and priority claims unless the holder agrees to different treatment. See 11 U.S.C. § 1129(a)(9). The Plan generally recognizes that requirement. But because the CRNA Claimants' asserted priorities remain unresolved, the confirmation order should make clear that confirmation neither adjudicates nor eliminates those asserted priorities.

**12.** A proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). Administrative-expense allowance, however, is determined after notice and a hearing under section 503, and the Plan itself provides that the allowed amount of an administrative claim will be determined by final order. Confirmation should not substitute for that claims-allowance process.

**13.** Accordingly, to the extent the Debtors contend that solicitation treatment, ballot classification, substantive consolidation, discharge, or any provision of the proposed confirmation order finally places the claims in Class 5, the CRNA Claimants object. They request an express reservation allowing the Court to determine, after appropriate notice and an evidentiary record, whether any portion is entitled to treatment under sections 503(b)(1)(A) or 507(a)(4), with the remainder treated in Class 5.

### B. CLASS 5 VOTING TREATMENT CANNOT OPERATE AS A WAIVER OR ADMISSION.

**14.** The Debtors' decision to issue a Class 5 ballot, or a claimant's submission of such a ballot, is a solicitation mechanism and not a final adjudication of allowance or priority. The CRNA Claimants' participation in voting should not constitute consent to Class 5 treatment of their entire claims, an amendment of their proofs of claim, or a waiver of the alternative priorities stated in their timely filings.

**15.** The confirmation order should therefore state that any ballot submitted by a CRNA Claimant is without prejudice to the asserted administrative and wage-priority components and does not create waiver, admission, judicial estoppel, claim preclusion, or issue preclusion concerning the amount, validity, or priority of the claim.

### C. AN ADEQUATE RESERVE IS NECESSARY PENDING FINAL DETERMINATION.

**16.** The Plan prohibits distributions on disputed claims until allowance and authorizes the Plan Administrator to reconcile and litigate claims after the Effective Date. Because Allowed Administrative Claims and Allowed Other Priority Claims receive materially different treatment from Class 5 claims, the confirmation order should require the Debtors or Plan Administrator to maintain a reserve sufficient to satisfy the portions of the CRNA Claimants' claims that may ultimately be allowed as administrative or priority claims.

**17.** Without an adequate reserve, distributions or transfers occurring on or after the Effective Date could render the promised section 1129(a)(9) treatment illusory. A reserve preserves the status quo without deciding the merits and protects all parties while the claims are resolved through stipulation or final order.

**D. THE DISCHARGE, INJUNCTION, RELEASES, AND WAIVER PROVISIONS MUST NOT PREJUDICE CLAIM ADJUDICATION OR PLAN PAYMENT.**

**18.** The CRNA Claimants do not seek authority to collect directly from the Debtors outside the Plan. They acknowledge that any allowed claims will be paid through the Plan according to their final classifications. They object, however, to any construction of the discharge, injunction, release, exculpation, waiver, or estoppel provisions that would prevent them from obtaining an allowance determination or receiving the treatment assigned to the claims once allowed.

**19.** The confirmation order should also confirm that nothing in the Plan's third-party release or injunction provisions releases claims against non-Debtor parties unless the affected claimant has expressly and consensually granted such a release in a manner permitted by applicable law. At minimum, any election to opt out of the releases must be given full effect.

## IV. RESERVATION OF RIGHTS

**20.** The CRNA Claimants reserve all rights concerning the validity, amount, classification, priority, amendment, and allowance of their claims; the evidentiary and legal bases for their asserted administrative and wage-priority treatment; objections to any claim objection; and all rights under the Bankruptcy Code, Bankruptcy Rules, Plan, and applicable nonbankruptcy law. Nothing in this limited confirmation objection constitutes a concession that any claim or component is prepetition, postpetition, administrative, priority, or general unsecured, except as ultimately stipulated or adjudicated.

## V. PRAYER

WHEREFORE, the CRNA Claimants respectfully request that the Court condition confirmation on inclusion of provisions in the confirmation order that:

**a.** confirmation does not determine the validity, allowance, amount, priority, or classification of the CRNA Claimants' claims;

**b.** the timely proofs of claim preserve the asserted administrative-expense, wage-priority, and general unsecured alternatives;

**c.** any Class 5 ballot or voting treatment is provisional and does not constitute waiver, consent, admission, amendment, estoppel, or adjudication;

**d.** the Debtors or Plan Administrator must maintain an adequate reserve pending final resolution of the claims;

e. any portion ultimately allowed as an administrative or priority claim will receive the treatment required by sections 1129(a)(9) and the Plan;

f. the discharge, injunction, releases, exculpation, and claims-resolution provisions do not prejudice adjudication or payment of the claims through the Plan; and

g. the Court retains jurisdiction to adjudicate the claims and grant all further relief to which the CRNA Claimants may be entitled.

Dated: August 28, 2026

Respectfully submitted,

**GREENFIELD LAW OFFICES, PLLC**
6217 Bryan Parkway
Dallas, Texas 75214
Telephone: (214) 642-7486

By: /s/ Adam S. Greenfield
Adam S. Greenfield
Texas Bar No. 24075494
adam@greenfieldlawoffices.com

**ATTORNEYS FOR THE CRNA CLAIMANTS**

**CERTIFICATE OF SERVICE**

I certify that on August 28, 2026, a true and correct copy of the foregoing was served through the Court's CM/ECF system upon all parties registered to receive electronic notice in these jointly administered cases and was separately served by electronic mail upon the following counsel identified in the Court-approved confirmation notice:

**Omar J. Alaniz**
Reed Smith LLP
oalaniz@reedsmith.com
**Scott M. Esterbrook**
Reed Smith LLP
sesterbrook@reedsmith.com
**Derek M. Osei-Bonsu**
Reed Smith LLP
dosei-bonsu@reedsmith.com

I further certify that the foregoing was served upon all additional parties required by the current Master Service List in these Chapter 11 Cases by the methods reflected in the service records maintained by undersigned counsel.

/s/ Adam S. Greenfield
Adam S. Greenfield